W. S. MARKHAM, AGENT, ETC., v. H. L. CARVER, LIGGETT & MYERS TOBACCO COMPANY, ET ALS.

(Filed 26 November, 1924.)

**Taxation—Boards of Equalization—Notice to Taxpayers—Constitutional Law—Due Process—Mandamus—Municipal Corporations.**

Where, in pursuance of the provisions of statute, the local authorities for the assessment of personal property of corporations, etc., have approved the reports of the owners of the value thereof for taxation, reported the same to the State board designated for the purpose, and no appeal taken from the local board, the State Tax Commission, who were the Corporation Commission, without notice or hearing given the owner, may not informally increase the assessment and order the increased taxes to be collected by the local authorities, the same being contrary to the due-process clause of our Constitution, though the increased value has been included in the report by the State Board to the Legislature and the report adopted by statute; and mandamus will not lie to compel the collection thereof by the local county or municipal authorities.

MARKHAM *v.* CARVER.

APPEAL by defendants from *Devin, J.,* from mandamus, heard, October, 1923. From DURHAM.

This is an action instituted by plaintiff as agent, on his own behalf, and on behalf of all other taxpayers of the county and city of Durham who might make themselves parties, against the defendants, H. L. Carver, W. D. Turrentine, Monroe Crutchfield, T. O. Sorrell, and E. A. Hughes, Board of Commissioners of the County of Durham, John F. Harward (sheriff of Durham County), the City of Durham, a municipal corporation, Liggett & Myers Tobacco Company, and American Tobacco Company, corporations.

The action is for a mandamus to enforce the collection of unpaid taxes alleged to be assessable for the year 1920, due and owing by defendants, Liggett & Myers Tobacco Company, and the American Tobacco Company.

The findings of the court below are as follows:

"This cause coming on upon the application of plaintiff for a writ of mandamus, before the undersigned, W. A. Devin, judge presiding and holding the courts of the Tenth Judicial District, and the hearing having been continued, by consent of all parties, to be heard before the undersigned, at Durham, N. C., on 17 September, 1923, and being then heard upon the pleadings; and the court, after hearing the pleadings, being of the opinion that issues of fact were raised by the pleadings which should be passed upon by a jury, and all parties thereupon consented and agreeing that issues of fact raised by the pleadings should be answered and found by his Honor instead of a jury after hearing the evidence; and the matter having been further continued, by consent of all parties, to be heard before the undersigned, at Hillsboro, N. C., on 5 October, 1923, when and where all parties appeared, and the same was heard, after hearing the evidence and argument of counsel, the court finds from the evidence the following:

"1. Plaintiff W. S. Markham is now, and was at the time of the commencement of this action and proceeding, a citizen and resident and taxpayer of the city of Durham, North Carolina, and at the January meeting, 1923, of the Board of Commissioners of Durham County the following resolutions were adopted, to wit:

" '*Resolved,* That pursuant to authority contained in section 7923 of the Consolidated Statutes, the commissioners of Durham County employ a competent man, whose duty it shall be to spend such time as may be necessary in making a diligent search for property not listed for taxes, and to put such property on the tax books.

" '*Resolved further,* Such person as employed shall receive as his entire compensation an amount not in excess of 10 per cent of the revenue so derived from said unlisted property, which said expense shall be

divided pro rata between the State and county: *Provided,* that on those cases where the State does not receive any part of the revenue derived from said unlisted property, said expense shall be borne by the county.'

"Pursuant to said resolutions, upon motion duly made and adopted, W. S. Markham, plaintiff, was employed to check the tax books of Durham County for the year 1922, and to get all previously unlisted property upon the tax books. That plaintiff undertook his duties as such, and among other things made written reports (attached as exhibits to the complaint) concerning the assessments and valuations of the property of defendants, the American Tobacco Company and the Liggett & Myers Tobacco Company, for the year 1920; that the commissioners of Durham County refused, and still refuse, to take any action on the report of plaintiff, or to order the sheriff of Durham County to proceed to collect the taxes therein referred to, with interest thereon.

"2. That the General Assembly of North Carolina, at its Session 1919, by chapter 84, Public Laws, enacted and required that all property (including the property of the two defendants, tobacco companies) in the State of North Carolina, for the year 1920, should be assessed for taxation at its true value in money; that defendants, American Tobacco Company and Liggett & Myers Tobacco Company, made, returned and filed with the tax authorities of Durham County statements of valuations of their respective leaf tobacco on hand in the city of Durham and in the county of Durham for the taxable year 1920.

"3. That prior to 10 August, 1920, to wit, on 7 August or 8 August, the State Tax Commission for the State of North Carolina, in its investigation of the value of the total taxable property in the State of North Carolina, which included the city of Durham and the county of Durham and the property of the two defendants, tobacco companies, increased, in addition to the values as reported and returned by said defendants, tobacco companies, in the city of Durham and in the county of Durham, the values of their leaf tobacco in the following amounts:

"The leaf tobacco of the defendant, the American Tobacco Company, was increased in value in the sum of $4,298,390, and the leaf tobacco of defendant Liggett & Myers Tobacco Company was increased in value in the sum of $9,657,111, which said increased amounts in values so fixed and determined and made by the State Tax Commission were included in the report of said State Tax Commission to the Governor of North Carolina in their report of 10 August, 1920, and was approved and confirmed by the Extra Session of the General Assembly of North Carolina, 1920, by chapter 1, ratified 26 August, and the tax supervisor of Durham County was notified by said State Tax Commission (by letter, dated 25 August, 1920) of said increased values of said two defendants, tobacco companies, and the same, by order of said State Tax

Commission, were added to the taxable property of said two defendants, tobacco companies, and placed upon the 1920 tax books of Durham County. That no other changes in valuation of personal property in Durham County were made by said State Tax Commission.

"The tax rate for Durham County for 1920 was 45 cents upon the $100 of valuation of property, and the tax rate for the city of Durham for 1920 was 55 cents upon the $100 of valuation of property.

"That said increases were not entered in tax books of Durham County until after 26 August, 1920.

"No other affirmative evidence of notice to defendant companies of such increases in valuations, or that same were being considered, appears, save as disclosed by the testimony.

"4. That after the General Assembly for the State of North Carolina, at its Extra Session, 1920, had adjourned, and after the tax books for the year 1920 of Durham County had been placed in the hands of the sheriff of Durham County for collection, with said increased values added thereto by the State Tax Commission, as aforesaid, the State Tax Commission instructed the county auditor of Durham County to strike said increased valuations aforementioned of $13,955,501 from the taxable property of said defendants, tobacco companies, which was done, and portion of tax on said increased valuations which had been paid were refunded.

"5. That defendants, commissioners of Durham County, John F. Harward (sheriff of Durham County), and defendant, the city of Durham, have declined and refused, and still decline and refuse, to collect the taxes on the aforementioned $13,955,501.

"6. The defendant, the American Tobacco Company, for the year 1920, is due and owing the county of Durham the taxes on $4,298,390 in value of property, at the rate of 45 cents on the $100, with interest thereon until paid; and defendant, the American Tobacco Company, is also due and owing the city of Durham the taxes on $4,298,390 in value of property, at the rate of 55 cents on the $100, with interest thereon until paid.

"7. The defendant, Liggett & Myers Tobacco Company, for the year 1920, is due and owing the county of Durham the taxes on $9,657,111 in value of property, at the rate of 45 cents on the $100, with interest thereon until paid; and the defendant, Liggett & Myers Tobacco Company, is also due and owing the city of Durham the taxes on $9,657,111 in value of property, at the rate of 55 cents on the $100, with interest thereon until paid.

"It is now considered, ordered, adjudged and decreed as follows:

"1. That the reduction in tax valuations of property of said defendant companies for the year 1920 attempted to be made by the State Tax

Commission and the Commissioner of Revenue (as set forth on fourth finding of fact) are adjudged to be without authority of law, and the tax valuations of said companies, as included in the report of the State Tax Commission to the Governor and adopted by the General Assembly by chapter 1, Extra Session 1920, are adjudged to be the lawful tax valuations upon which the taxes of said companies for said year should be computed, levied and collected.

"2. The defendant, the American Tobacco Company, is due and owing the county of Durham the sum of $19,342.75, with interest thereon until paid, on account of unpaid taxes for the year 1920; and defendants county commissioners and the sheriff of Durham County are hereby ordered and directed to proceed according to law to levy and collect the same.

"The defendant, the American Tobacco Company, is due and owing the city of Durham the sum of $23,641.15, with interest thereon until paid, on account of unpaid taxes for the year 1920; and defendant city of Durham and its tax collector are hereby ordered and directed to proceed according to law to collect the same.

"3. The defendant, Liggett & Myers Tobacco Company, is due and owing the county of Durham the sum of $43,456.99, with interest thereon until paid, on account of unpaid taxes for the year 1920; and defendants, county commissioners and the sheriff of Durham County, are hereby ordered and directed to proceed according to law to levy and collect the same.

"The defendant, Liggett & Myers Tobacco Company, is due and owing the city of Durham the sum of $53,114.11, with interest thereon until paid, on account of unpaid taxes for the year 1920; and defendants, city of Durham and its tax collector, are hereby ordered and directed to proceed according to law to levy and collect the same.

"4. The court does not now pass upon the question of allowances to plaintiff, W. S. Markham, or to plaintiff's counsel, for services as prayed for in the complaint; and the question of the allowances is continued, to await the final determination of this action upon any appeal to the Supreme Court of North Carolina which may be had or taken by defendants.

"5. Plaintiff will have and recover of defendants the costs of this action, to be taxed by the clerk."

*Brawley & Gantt and W. B. Guthrie for plaintiff.*

*E. S. Parker, Jr., and Fuller & Fuller for the American Tobacco Company and Liggett & Myers Tobacco Company.*

*Brogden, Reade & Bryant for Board of Commissioners of the County of Durham.*

CLARKSON, J. The Legislature of North Carolina (Public Laws 1919, ch. 84) passed what is known as the Revaluation Act, "An act to provide for the listing and valuing of all property, personal and mixed, at its real money value."

Part of section 19 is as follows: "All personal property, unless herein otherwise provided, shall be listed and assessed as of the first day of January of each year. Between the first day of January and the fifteenth day of May every person who is liable for the listing of any personal property shall furnish to the county supervisor, or his assistant, a full and correct description of all personal property of which he was the owner on the first day of January of the current year, which the taxpayer is required by law to list, fixing what he deems to be a true and actual value of each item of personal property, for the guidance of the county supervisor, or his assistant, who shall finally settle and determine the actual value of each item of such property by the rule prescribed in section four of this act."

The findings of fact and record show that the defendants, Liggett & Myers Tobacco Company, and the American Tobacco Company, in accordance with the above section, furnished the county supervisor and his assistants of Durham County statements of valuation of their respective leaf tobacco. The statute required these defendant corporations to make oath that the statement contains a true, full and correct list of all personal property owned on 1 January, 1920; that no property had been converted for evasion; that the property had been fully and fairly described and its true condition represented; that it had not sought to mislead the officials as to the entire quantity, quality or value of the property; that, to the best of its knowledge and judgment, the corporation had valued its said property at its true and actual value—that is, the price that could be obtained at private or voluntary sale for cash. This return was made to officials appointed, not by local authorities, but, under the Revaluation Act, by the State Tax Commission, who were the Corporation Commission, a court of record—State officials, elected by the people. After the returns of personal property are sworn to, as above indicated, and filed with the county supervisor or his assistants, the supervisor then placed these sworn statements before the county board of appraisers and review. This was a nonpartisan and nonpolitical board.

Laws 1919, ch. 84, part of sec. 8, is as follows: "The two members of the county board of appraisers and review, other than the county supervisor, who is to be chairman of such board, shall be nominated, one from each political party, by the board of county commissioners of each county, at their regular meeting in the month of April, one thou-

sand nine hundred and nineteen, such nomination to become effective when approved by the State Tax Commission."

Section 27 is as follows: "The officers created under this act shall be nonpolitical and nonpartisan in character, and any undue political activity by any officer provided for under this act shall be sufficient cause for removal by the State Tax Commission or by the Governor of the State."

The duty of this board, as set forth in section 22, *supra,* is as follows: "When the county supervisor and his assistants have completed their taking of the lists of personal property in all townships in the county, the lists so taken shall be placed before the county board of appraisers and review, and it shall be the duty of the said board to review carefully the list as returned by each taxpayer, to ascertain if in each case a complete return has been made, and if the property returned has in each case been valued at its value in money, as required by this act; and it shall be the duty of the said board to revise such valuations wherever necessary to make the valuations conform in all respects to the rule required by this act, and, if any property has not been returned, to cause the same to be properly entered on such lists at the true value in money of such property."

Under section 23, full and ample power is given the supervisor and his assistants to make every investigation necessary, production of books, examination of witnesses, etc., if they have reason to believe that property listed is not true and complete.

Section 25 provided that the listing of all property, real and personal, should be completed in each county not later than the first day of May of each year, and complete abstracts of such lists should be mailed to the State Tax Commission by the county supervisor not later than 15 May, 1920, and of each year thereafter.

It appears from the entire record, and from the facts found by the court below, that the supervisor and assistants were under oath; the county board of appraisers and review, a nonpartisan, nonpolitical board, were under oath, and the defendants were under oath; that in making their returns defendant corporations returned its leaf tobacco in accordance with the requirements of the statute, and made oath as to its real money value.

Section 26 is headed, "Equalization or Revaluation." It provides that the State Tax Commission shall have authority as a State Board of Equalization, given in chapter 234, Public Laws 1917, "and it shall have authority to make such investigation, through its district supervisors, county supervisors, or special examiners, as may be necessary to determine if the list returned for each county is a complete list, and if the valuations returned have been made as required by this act. If prop-

erty is found that has not been returned, it shall order such property placed on the list, and if it is found that the property in any county had been valued either higher or lower than required by this act, it may order a revaluation in such county, or require by general order that a percentage increase or decrease be made for the year in which such order is made, but shall in that case order a complete revaluation of all such property at some time during the next ensuing year, to the end that any possible injustice that may have been done by the percentage increase or decrease may not be continued. If it is found necessary to order a revaluation in any county, the State Tax Commission shall designate both the county supervisor and the county board of appraisers and review, by whom the reassessment shall be made, and the expense of such revaluation shall be borne by the county, and is hereby declared to be a necessary expense of such county."

It will be noted that in the Revaluation Act, in the case of real estate, provision was made for a hearing before the county board of appraisers and review in cases where a taxpayer should be dissatisfied with the valuation placed upon his real estate by the county supervisor, with the right to appeal to the State Tax Commission, whose decision should be final. Any member of the county board of appraisers and review had also the right to appeal from the value fixed upon the real estate of a taxpayer in his county. It seems, and may be, that there is no provision in chapter 84 of the Public Laws of 1919, or chapter 234 of the Public Laws of 1917, which, by section 1 of the Revaluation Act, was continued in full force and effect for the listing and valuing of property, for appeals from values fixed by the county supervisor, or his assistant, upon personal property.

In the case at bar the county board of appraisers and review of Durham County approved the return of the American Tobacco Company, that the true and actual value that it made under oath was $9,141,005, and likewise approved the return of Liggett & Myers Tobacco Company of $15,202,151; that this was the valuation of the two corporations' leaf tobacco fixed by the proper·authorities of Durham County, and which was included in the abstracts of property for Durham County, and which was sent to the State Tax Commission by the supervisor of Durham County, as provided by law. The State Tax Commission increased the value of the leaf tobacco of the defendant and the American Tobacco Company in the sum of $4,298,390, and that of the defendant Liggett & Myers Tobacco Company $9,657,111—a total of $13,955,501 for the two companies. .The two companies had returned $24,343,156, which the supervisor and the county board of appraisers and review of Durham County had passed on and determined as its true and actual real money value. The report of State Tax Commission on revaluation to the Gover-

nor, and adopted by the General Assembly, has this increased valuation of $13,955,501 on the leaf tobacco of the defendants—more than one-third increase from the valuation put on it by the local authorities of Durham County, where the property was situate.

The problem, and the only one in this case, is whether the State Tax Commission, sitting in Raleigh, can, without notice to defendant corporations and without a hearing, increase the valuation of its property, which amounts to an increase tax. This is the crux of this case. The power to tax is the power to destroy. The principle here involved is fundamental and goes to the very root of our institutions.

It is contended by plaintiff that defendants had notice. The learned judge who tried this case found all the facts but this all-important one—*notice*. As to this, he says: "No other affirmative evidence of notice to defendant companies of such increases in valuation, or that same was being considered, appears, save as disclosed by the testimony." This was tantamount to finding that no sufficient notice was given, as the record discloses none. Does the testimony in the record disclose any notice to defendant corporations? The only witness examined on this aspect in the case was J. S. Griffin, the clerk of the State Tax Commission, who testified substantially that the county supervisor's report, as to the value of all the personal property in Durham County, to the State Tax Commission showed $53,000,000, and it had been increased to $66,000,000—the difference, about $13,000,000, being added to the valuation put on the defendants' leaf tobacco by direction of the chairman of the State Tax Commission. No permanent record was kept by the State Tax Commission showing the facts in connection with this matter. There was no meeting of the State Tax Commission as a body in their official capacity. The witness further testified: "That the increase in the value of personal property of Durham County for the year 1920, as shown by the difference in such value in the report of the county supervisor, S. P. Mason, made to the Tax Commission, and the report of the State Tax Commission to the Governor, were made before 10 August, the date of said report to the Governor, and that at the time he did not think any appeal by the defendant tobacco companies was pending from any other value that had been fixed; that it was determined on Sunday afternoon before the convening of the extra session of the Legislature of 1920 to throw this value into the report; it may have been Saturday, and we were trying to get our report finished by the time the Legislature met. I think they met on Tuesday, and the question came up Sunday afternoon, I think. It may possibly have been Saturday. Mr. Maxwell and myself had direct charge of the compilation of this report—as to whether or not we would throw this total into the report. There was

no appeal pending at that time, and we discussed it right much, and finally Mr. Maxwell sent for Mr. Lee, or Mr. Lee came in the office, and we decided to put it in the total for Durham County. I am pretty sure that was Sunday afternoon. We closed up the report Sunday night. That increase was put in Sunday before the Legislature met on Tuesday. No appeal was pending by these tobacco companies for the valuation at the time it was reported to the Governor. After this was done, the letter of 25 August was written to Mr. Mason and that was the first letter that went down to anybody about the increased valuation of the property of the defendant tobacco companies, but I do not know whether the letter was mailed—and I did not mail it myself. It was mailed in due course of business, I take it, but I do not know the date."

From the record evidence, we can find no sufficient testimony that the defendant companies had notice of the increase before it was made. In fact, no evidence, nor was there any appeal to the State Tax Commission on either side pending to fix the Tobacco Company with notice. If the State Tax Commission increased the valuation without notice or a hearing, it follows, as a matter of course, that the Legislature's approval based on the report was perfunctory, *proforma* and without notice, and there could be no presumption under the facts here that the defendants had notice, when the record shows clearly they had no notice. The record shows that on a Sabbath evening—no meeting of the State Tax Commission, consisting of the Corporation Commission, W. T. Lee, chairman, A. J. Maxwell and Geo. P. Pell, but the clerk of the State Tax Commission, Mr. J. S. Griffin, a man careful in his testimony, a witness for plaintiff states that he and Mr. Maxwell, who had direct charge of the compilation of the report to his Excellency, Governor T. W. Bickett, "as to whether or not we would throw this total into the report." No appeal pending. They discussed it right much and finally Mr. Maxwell sent for Mr. Lee who came and "we decided to put it in the total for Durham County"—the report was closed Sunday night. No other tax-payers' property for Durham County, except the defendant corporations' were increased.

It may not be amiss to call attention to the fact that by subsequent legislation, the State Tax Commission ceased to exist, and certain powers like unto the State Tax Commission were given the Board of Equalization, composed of the Chairman of the Corporation Commission, Commissioner of Revenue and the Attorney-General. Mr. W. T. Lee, who was chairman of the Corporation Commission, was on the Board of Equalization, and the board, after hearing evidence, unanimously found and declared that the value settled and determined by the County Supervisor and reviewed by the County Board of Appraisers and Review, to wit, $9,141,005, of the American Tobacco Co., and $15,-

202,151 ($15,575,271) of Liggett & Myers Tobacco Co., were the full actual value of the said tobacco as of 1 January, 1920, and thereupon ordered that the said valuation be restored, thus nullifying the action taken on the Sabbath evening. Although Mr. Lee was temporarily in the Sabbath conference, he thought it just afterwards to reduce the assessment. We do not go into the matter of the Board of Equalization taking off the increase, as we think it unnecessary for the consideration of this case. We cite this matter as this board, sitting as officials under oath, heard evidence and nullified the Sabbath evening action.

Cooley on Taxation, Vol. 3 (4 ed.) chap. 18, part of sec. 1123, p. 2272, says: "Where a statutory board of review holds stated meetings, with power to increase assessments, everybody is notified of the fact, and is warned to attend if he deems it important; and it is often held that under such circumstances special notice of the raising of a particular assessment, or of the adding of omitted property, need not be given. But as an increase in an assessment is not frequent, and will seldom be anticipated by the taxpayer, who will not be likely to attend upon the review except to seek a reduction, it seems safer and more just to hold, as has generally been done, that the taxpayer should have personal notice of any purpose to increase the assessment made against him. *The general rule is that after an assessment has been made by an assessor, it cannot be increased by the assessor or by a reviewing board without notice to the taxpayer or opportunity to be heard,"* (italics ours), citing numerous cases from U. S. Court, Alabama, California, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Michigan, Mississippi, Missouri, Nebraska, Nevada, New Jersey, South Carolina, South Dakota, Wisconsin, Texas and Washington.

Cooley, *supra,* sec. 1123, p. 2275, further says: "This rule is almost universal either because so declared by statute or because of the due process clause or for other reasons. Absence of notice or opportunity to be heard violates the due process of law provision." To support the latter proposition, he cites the case of *Lumber Co. v. Smith,* 146 N. C., p. 199, written by the late learned former *Associate Justice H. G. Connor,* of this Court, and afterwards District U. S. Judge. We think that case, in the terminology of the lawyer, on "all-fours" with the case at bar. The facts in that case were: The Board of Commissioners of Caldwell County had placed upon the tax lists, as a solvent credit, certain notes owned by the plaintiff, which the commissioners valued at their face value and so assessed them for taxation. No notice was given the plaintiff of listing, valuing or assessing the notes. The tax list was placed in the hands of the sheriff for collection and he advertised plaintiff's real estate for sale in order to collect the tax. The plaintiff sued out an injunction and this Court affirmed the judgment of the

MARKHAM *v.* CARVER.

judge of the Superior Court continuing the injunction to the hearing. The Court's unanimous opinion said: "The power to tax, it has been said, and the truth of the saying too frequently exemplified, is the power to destroy. While the power is essential to the life of the State, its enforcement by constitutional methods and within constitutional limitations is essential to the safety of the property of the citizens. 'Proceedings for the assessment of a tax being *quasi* judicial, it follows that, in order to give validity to the assessment, notice thereof should be given to the owner of the property to be assessed.' 27 A. & E. Enc., 704. . . . 'It is, therefore, a matter of utmost importance to the person assessed that he should have some opportunity to be heard and to present his version of the facts before any demand is conclusively established against him; and it is only common justice that the law should make a reasonable provision to secure him, as far as may be practicable, against the oppression of unequal taxation *by making the privilege of being* heard a legal right.' Cooley on Taxation, 625. . . . 'Provision for notice is, therefore, part of the "due process of law," which it has been customary to provide for these summary proceedings; and it is not to be lightly assumed that constitutional provisions, carefully framed for the protection of property rights, were intended or could be construed to sanction legislation under which officers might secretly assess the citizen for any amount in their discretion without giving him the opportunity to contest the justice of the assessment.' Cooley, 628."

In *Bankers Life Ins. Co. v. County Board of Equalization,* 89 Neb., 469, N. W., 1034, it was said: "It seems clear from the authorities that such change or addition made without notice and without an opportunity for a hearing somewhere along the line of procedure is void, for it amounts to 'taking the property of the citizen without due process of law.' *Stuart v. Palmer,* 74 N. Y., 183; *Central of Georgia R. Co. v. Wright,* 207 U. S., 127; *Horton v. State,* 60 Neb., 701; *Dixon County v. Halstead,* 23 Neb., 697."

The Supreme Court of the U. S., speaking of the phrase "due process of law" holds before a person can be deprived of his property, notice must be given. In *Traux v. Corrigan,* 257 U. S., 312, the Court holds, in general, what is due process of law in the respective state is regulated and determined by the law of each state, and this amendment in no way undertakes to control the power of a state to determine by what process legal rights may be asserted or legal obligations enforced, provided the method of procedure adopted for these purposes gives reasonable notice and affords a fair opportunity to be heard before the issues are decided. The courts will interfere with state action on the ground that it is

repugnant to this clause only where fundamental rights have been denied. Const. of U. S., anno. (1923) p. 633, 634, citing numerous authorities.

In *McGregor v. Hogan,* U. S. Superme Court advanced opinions (decided 12 November, 1923) p. 27, it is held: "It is not essential to due process of law that the taxpayer be given notice and hearing before the value of his property is originally assessed, it being sufficient if he is granted the right to be heard on the assessment before the valuation is finally determined. *Pittsburgh C. C. & St. L. R. Co. v. Backus,* 154 U. S., 421, 426; 38 L. Ed., 1031, 1036; 14 Sup. Ct. Rep., 1114. And see *McMillen v. Anderson,* 95 U. S., 37, 42; 24 L. Ed., 335, 336; and *Turpin v. Lemon,* 187 U. S., 51, 58; 47 L. Ed., 70, 74; 23 Sup. Ct. Rep., 20. The requirement of due process is that after such notice as may be appropriate, the taxpayer have opportunity to be heard as to the amount of the tax by giving him the right to appear for that purpose at some stage of the proceedings before the tax becomes irrevocably fixed. *Turner v. Wade, supra,* p. 67. And see *Londoner v. Denver,* 210 U. S., 373, 385; 52 L. Ed., 1103, 1112; 28 Sup. Ct. Rep., 708."

In *R. R. v. Comrs., ante,* 266, the following is said: "Plaintiff takes the position that the increased valuation of its property was made by the list-taker without any proper notice and that the same was approved by the board of commissioners, sitting as a board of equalization on the second Monday in July, (C. S., 7938) without giving plaintiff an opportunity to be heard. The facts are, however, as found by the court below, that the plaintiff's agent did have notice of the action of the list-taker in making the change in question and the matter was reported by him to the legal department of plaintiff company for attention." In that case the list-taker made a personal investigation of the property and increased the valuation to the sum as it had been listed the year before and notified plaintiff company what had been done. The Board of Equalization, under the statute, met on the second Monday in July, of the same year, to consider these tax matters, but plaintiff failed to take advantage of the notice and appear before the Equalization Board to make its objection before the proper tribunal, although having been notified, sometime before, on the 29th of May of that year. The Equalization Board approved the report of the list-taker. Notice was required to be published, etc., under the statute, of this July meeting so that all dissatisfied tax-payers could be heard as to the valuation of their property, and have the same corrected or equalized if found to be unjust or unequal. In that case, it will be seen that it was conceded that notice had to be given, and notice was given, and the statute provided the time and manner in which objections could be heard and a hearing provided for. In fact, the statute (C. S., 7938, *supra*) says: "They shall have

power, *after notifying the owner or agent,* to raise the valuation of such property as they shall deem unreasonably low." Method is provided in the statute how the hearing shall be conducted. If local boards may not act without notice, then *a fortiori* a board sitting in Raleigh, far distant from where the property is located, should not act without notice.

The tax, if legal, in this case would go to Durham County and the city of Durham. The Board of Commissioners of the county of Durham in their answer say: "That these defendants admit that they have taken no action upon said report filed by the plaintiff and have taken no steps to collect the tax referred to in paragraph 10 of the complaint for the reason that these defendants, after investigation, were of the opinion that the value placed by the defendants, Liggett & Myers Tobacco Company and the American Tobacco Co., upon their property represented the true value of said property as of 1 January, 1920."

The city of Durham in its answer says: "This defendant admits that its tax collector has taken no steps to collect the tax referred to in paragraph 10 of the complaint, for the reason that said property has never been placed upon the tax books of the city of Durham."

In *Mfg. Co. v. Comrs.* (of Cabarrus County), 183 N. C., p. 553, the assessment was on industrial plants—real estate. The value as finally fixed was done after the Cannon Mills *had notice* and a *hearing* on appeal before the State Tax Commission, and its findings of assessment was incorporated in the State Tax Commission's report to the Governor, which was approved by the Legislature. When this was done, the State Tax Commission had no authority to change it. Laws 1919, chap. 84, sec. 15, gave right of appeal by either side in real estate assessments to the State Tax Commission, and its findings were final. In the present case, the increase was made of personal property without *any notice or a hearing;* and, perhaps, without any statutory authority, the finding of the local authorities being the forum. This we do not pass on, as we think the assessment could not be increased without notice or a hearing.

In giving the facts as taken from the record, we do not mean to criticise the action of any official. If mistakes have been made and the law not properly administered, their conduct should not be weighed in "gold scales." The revaluation measure was new and untried. The work was a tremendous undertaking, and the report of 10 August, 1920, of the Corporation Commission, which was the State Tax Commission, to his Excellency, Governor T. W. Bickett, before the extra session of the Legislature of 1920, was a revolution in the taxing system of the State. It is but human that errors and injustices in so large an undertaking must of necessity have arisen. The whole tax structure could not be completed in so short a time. In the present case the assessment of the

MARKHAM *v.* CARVER.

leaf tobacco by the State Tax Commission was not made in accordance with law. Whatever may be the desire to collect tax, we have no right to take a copper from the rich or poor except through and by the law of our land. Any other course would in time affect our whole social structure. The facts and the justice in this case are not hard to comprehend. Under the new Revaluation Act the defendants, under oath returned their leaf tobacco as of 1 January, 1920. This was approved and agreed to by the local authorities of Durham County—nonpartisan and nonpolitical officials, all under oath. On a Sabbath evening, 8 August, 1920, just before the Revaluation report was made to the Governor, this assessment, made under oath by defendant corporations agreed to and accepted by the local authorities, *without notice or hearing* to the defendant corporations and without a regular meeting of the State Tax Commission, was increased in an informal manner over one-third more than it was returned at under oath. In the language of the witness "to throw this value into the report." If $13,000,000, increase in assessment can be thrown into the "melting pot" of taxes without notice or a hearing and we should sustain this, we would be blinded like Samson and perhaps some day pull the pillars of the house down to fall on the poor as well as the rich. We can find no authority to take property without notice or a hearing—this is due process of law.

The chairman of the State Tax Commission, who afterwards by virtue of his office became a member of the Board of Equalization, informally had agreed the Sabbath evening to the increase and after mature consideration with the other members of the Board of Equalization, they unanimously took the increase off. The Board of Commissioners of Durham County in their sworn answer admit that the original returns were correct and the returns were the true value. The city of Durham takes no affirmative position in its answer asking for the increase. These are the two bodies most vitally interested. The defendant corporations have paid the tax on the assessment fixed by the proper local authorities. The only active contest is by plaintiff, who was employed and "whose duty it should be to spend such time as may be necessary in making a diligent search for property not listed for taxes, and to put such property on the tax books." For this he is to get not in excess of 10 per cent of the recovery. He has performed the duty imposed and brought this case. The fathers who founded this republic built it on the Rock of Ages—Justice to the rich and poor alike. *Fiat justitia, ruat cœlum.*

From the facts and circumstances of this case, any other view taken would make the law a "rope of sand."

For the reasons given, there was error in the judgment of the court below.

Error.