STATE v. ANDREW CHESSON AND CHESTER HEDGEBETH.

(Filed 10 December, 1947.)

**1. Criminal Law § 81b—**

Upon review by *certiorari* of the denial of defendant's motion for a new trial on the ground that he was denied due process of law in the trial resulting in his conviction, it will be presumed that the trial court correctly instructed the jury as to the facts of the case, in the absence of suggestion to the contrary. G. S., 1-180.

**2. Criminal Law § 81h—**

Where all the evidence is not sent up in response to *certiorari* to review, the denial of defendant's motion for a new trial, it will be presumed, in the absence of a showing to the contrary, that a finding by the court hearing the motion was based on the evidence before it, notwithstanding the record evidence fails to contain all the supporting evidence.

**3. Criminal Law § 57d—**

Upon defendant's motion for a new trial on the ground that he was deprived of his constitutional rights in the trial resulting in his conviction, the burden is upon him to show affirmatively facts inducing the legal conclusion that his constitutional rights in the respects alleged were denied him, the presumption being in favor of the regularity of the trial.

**4. Constitutional Law § 34b—**

The fact that defendant was arrested 28 December, tried in Recorder's Court 31 December, and in the Superior Court during the term beginning 6 January of the following year, all in the regular course for the disposition of the case in the courts where it was properly cognizable, does not, without more, induce the legal conclusion that defendant was deprived of due process guaranteed by the Constitution of North Carolina.

**5. Same—**

Expedition in the trial of criminal actions is not to be sought at the expense of rights of the individual guaranteed by the Constitution.

**6. Constitutional Law § 34d—**

Ignorance of defendant and his unfamiliarity with legal matters are not alone sufficient to render the appointment of counsel for him mandatory in a prosecution for less than a capital offense. Constitution of North Carolina, Art. I, sec. 11.

**7. Same—**

A defendant has the constitutional right to have counsel and to be represented by counsel, and to have counsel assigned if requested where the circumstances are such as to show apparent necessity of counsel to protect defendant's rights, but in the absence of request the propriety of providing counsel for a person accused of an offense less than a capital felony rests in the sound discretion of the trial judge. G. S., 15-4.

**8. Constitutonal Law § 34a—**

The guarantee of the Constitution of North Carolina that no person shall be deprived of life, liberty, or property "but by the law of the land" requires that conviction of crime be had only under the general law in the regular course of the administration of justice through courts of competent jurisdiction, and be consonant with fundamental principles of liberty and justice.

**9. Same—**

The Fifth and Sixth Amendments to the Federal Constitution apply only to trials in Federal Courts; the Fourteenth Amendment against denial of due process is applicable to a State's action, in judicial proceedings as well as through other agencies of the State.

**10. Same—**

Defendant was convicted of a crime less than a capital felony. Defendant moved for a new trial on the ground that want of counsel, the speed with which the trial was conducted to its conclusion, coupled with defendant's youth and inexperience, amounted to a denial of due process of law. *Held:* Upon the facts found disclosing that defendant made no request for counsel, and that the trial was in the regular course of practice of the courts having jurisdiction, the denial of defendant's motion was without error.

**11. Same—**

The Fourteenth Amendment to the Federal Constitution does not require a state, contrary to its own practice, to furnish counsel for a defendant.

**12. Criminal Law § 81h—**

Upon defendant's motion for a new trial on the ground that he was denied due process of law, the allegations in the petition and affidavits are not conclusive, but the findings of the court supported by evidence offered by defendant or the evidence offered by the State *contra*, are conclusive.

APPEAL by defendant Hedgebeth from *Burgwyn, Special Judge,* at July Term, 1947, of WASHINGTON. Affirmed.

The motion of defendant Hedgebeth to set aside the verdict and judgment rendered against him at a previous term of the court, and for a new trial, was heard by Judge Burgwyn at the July Term, 1947, of the Superior Court of Washington County.

Upon the record, the defendant's petition and affidavits, and the oral testimony of Sheriff Reid, the following judgment was entered:

"It appearing to the Court that the defendant was indicted upon a warrant issued by the Recorder's Court of Washington County on December 28, 1946, and that three days later a preliminary hearing was given him before the Recorder of Washington County on said charge at which time he and another were bound over to the Superior Court of Washington County upon a charge of highway robbery, it being alleged

by the State that he, with another, did by force and arms and after placing him in fear for his life, take from the person of Delmer Wilkins a sum of money in the amount of One Hundred Twenty Seven ($127.00) Dollars; it further appearing to the Court that bond in the sum of Five Hundred ($500.00) Dollars was required of the defendant Chester Hedgebeth, which he was unable to give and that in default thereof he was placed in the county jail of Washington County to await trial on said charge; that thereafter and on the 6th day of January, 1947, the regular Superior Court of Washington County was convened and at said term a bill of indictment was returned by the grand jury against the said Chester Hedgebeth and another, charging them and each of them with the crime of highway robbery from the person of Delmer Wilkins; that thereafter and during said term the defendant was called to the bar for trial with his co-defendant; that each of the defendants pleaded not guilty; that inquiry was made of them if they had counsel and upon their answering in the negative the Court proceeded to trial; that after the introduction of testimony by the State the defendant Chester Hedgebeth took the stand voluntarily and gave evidence tending to show that he was not guilty; that thereafter the Judge, Honorable J. Paul Frizzelle, presiding, charged the jury upon the questions of law and facts and that thereafter the jury returned a verdict and for that verdict said the defendant and his co-defendant were guilty; that thereupon the defendant was sentenced by the Judge presiding to a term of years in the State's Prison, to-wit, not less than nine nor more than ten years; that thereafter and on the 9th day of July, 1947, the defendant sued out a writ of *habeas corpus* which was duly signed by Judge Luther Hamilton, one of the Judges of the Superior Court of North Carolina, commanding that the said defendant be produced in open court at the July term of the Superior Court of Washington County, and said writ having been served upon the proper authorities of the State's prison the said defendant was produced in open court of Washington County on July 9, 1947, at which time he was represented by Attorney W. L. Whitley, a member of the Bar of Washington County; that said attorney presented the cause of the defendant to the Court upon delayed motion, which the Court gladly heard; that the trial, conviction and sentence of the said defendant at the January Term, 1947, of said Court be set aside and declared void and that the petitioner Chester Hedgebeth, be granted another trial, or a new trial, and for such other and further relief as to the Court seemed proper, basing his argument upon alleged denial of the defendant's right by the Court, in the expediency of the trial, in the lack of counsel for the defendant and upon the general ignorance of the defendant of his rights. The Court heard the oral testimony, on behalf of the prosecution, of Sheriff Reid, the high sheriff of Washington County.

"The Court finds as a fact that the father and mother of the defendant resided in Currituck County, a distance of some fifty-eight miles or more from the county seat of Washington County, and that the wife of the defendant resided in Washington County and had knowledge of his incarceration and of the nature of the charge preferred against him; that the defendant had sufficient mental capacity to realize the nature of the charge against him and had opportunity, had he been financially able to so do and desired to so do, to procure counsel, and that the Court, at neither the hearing before the Recorder and the trial of the Superior Court, appointed counsel to represent the defendant's interest. The Court also finds the charge preferred against the defendant and upon which he was tried was not and is not a capital offense under the laws of the State of North Carolina. The Court is of the opinion that the due process clause of the Constitution of the United States and of the Constitution of the State of North Carolina have in nowise been violated in the trial of this cause and that the applicant is detained by virtue of a judgment of a Court of competent jurisdiction, and, therefore, the motion of the defendant's counsel and the defendant is denied and it is the judgment of the Court that the defendant be remanded to custody of the Warden of the State's Prison and the writ of *habeas corpus* dismissed."

The writ of *habeas corpus* having been discharged, and defendant's motion denied, the defendant petitioned the Supreme Court of North Carolina for writ of *certiorari,* which was allowed, and in response to the writ the record was presented to this Court for review.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Wilford L. Whitley, Jr., for Chester Hedgebeth.*

DEVIN, J. The defendant Hedgebeth asks us to review the judgment below, assigning as grounds for relief that in the trial in the Superior Court of Washington County his constitutional rights were violated and due process of law denied him, in that he was without counsel, that he was not aware or informed of his rights, and that he was put upon his trial for the alleged commission of a serious felony within too short a time after his arrest. He alleges his innocence of the crime charged against him.

From the findings of fact made by the Judge who heard the defendant's motion below, based upon the averments in his petition and the oral evidence heard, upon which defendant's motion was denied, it sufficiently appears that on 28 December, 1946, defendant Hedgebeth and one Andrew Chesson were arrested charged with assault with deadly weapon and robbery of a sum of money from the person of Delmer Wilkins, and

that on 31 December, 1946, these two defendants were tried in the Recorder's Court of Washington County, and probable cause having been found, were placed under bond for their appearance at the next term of the Superior Court of the county. The required bond of $500 was not given and the defendants remained in jail. The next term of the Superior Court began 6 January, 1947. At this term bill of indictment in due form charging the defendants with the felony of robbery was returned by the grand jury a true bill, and during the term the case was called for trial. Each defendant pleaded not guilty. Inquiry was made of them by the presiding Judge Frizzelle if they had counsel, to which they answered in the negative. No counsel was assigned, nor was the assignment of counsel requested. The trial apparently was conducted in accordance with correct procedure in this jurisdiction and no criticism in that respect is offered. The defendant Hedgebeth voluntarily went on the stand and testified as a witness in his own behalf, his testimony tending to show he was not guilty. In the absence of suggestions to the contrary, under the rule in this State, it will be presumed the trial judge correctly instructed the jury as to the law and facts of the case (G. S., 1-180); *S. v. Hargrove,* 216 N. C., 570, 5 S. E. (2d), 852; *Bell v. Brown,* 227 N. C., 319 (322), 42 S. E. (2d), 92. The jury returned verdict of guilty as to both defendants, and they were sentenced to State's Prison for terms of nine to ten years.

The record further discloses that defendant Hedgebeth was a tenant farmer, resident in Washington County, and 24 years of age; that his schooling did not extend beyond the third grade; and that his father and mother lived in another county some 58 miles from the place of trial. The judge who heard the motion also found that the wife of the defendant resided in Washington County, and that she had knowledge of his incarceration and of the nature of the crime charged. The defendant makes the point that this last mentioned fact does not appear in the written record. However, as the judge heard the oral testimony of the sheriff, which was not sent up, it will be presumed his finding was based on evidence he heard, in the absence of some showing to the contrary. *Banking Co. v. Bank,* 211 N. C., 328, 190 S. E., 472.

The defendant's evidence, and particularly the affidavit of his father, would tend to indicate that the defendant was ignorant and unacquainted with business or legal affairs; that he had not been arrested before and was inexperienced in court procedure; that he was not of average mentality; that his father was not informed of his arrest, and, if he had been so advised in time, would have procured counsel. However, it was found by the judge from the evidence before him, "that the defendant had sufficient mental capacity to realize the nature of the charge against him and had opportunity, had he been financially able to so do, and desired to so do, to procure counsel." The defendant and his counsel were present

at the hearing. The charge in the bill of indictment under which defendant was tried was not a capital felony and the punishment upon conviction would not exceed 10 years in prison.

In the consideration of the defendant's appeal from the judgment denying his motion, it may be observed that no presumption would arise from the mere filing of defendant's motion that the trial was otherwise than in accord with approved practice and procedure in North Carolina courts (*S. v. Harris,* 204 N. C., 422, 168 S. E., 498), and the burden would rest upon the defendant to show affirmatively such facts as would induce the legal conclusion that certain of his constitutional rights in the respects alleged were denied him. It is in this view that the Attorney-General points out that the defendant's petition fails to show affirmatively that he was without funds to employ counsel, or that he requested or desired counsel, or made any effort to secure or communicate with one, or that he attempted to or was denied right to communicate with his father, or that he requested the attendance of any witnesses, or that there were any witnesses whose testimony would have helped him. The petition does not appear to contain any allegation that the trial judge failed to explain the nature of the charge against him, or that the defendant did not understand that the single issue of his guilt or innocence was being submitted to the determination of the jury. Already he had been tried on this charge in the Recorder's Court and knew the charge and the evidence against him. At no time did he ask for delay, nor after conviction did he express a desire for an appeal. He was tried in the county of which he and his wife were residents and where presumably his duties as a citizen were accustomed to be performed. That the evidence offered by the State was competent, and, if accepted by the jury, sufficient to convict is not denied, though defendant maintained his innocence, nor is it alleged that the trial judge failed to instruct the jury fairly and correctly. The other defendant jointly indicted and tried with the appellant has made no motion for a new trial.

On the other hand, the defendant's position is that the defendant's ignorance, his poverty, his unfamiliarity with court procedure, the speed with which his case was brought to trial while he was held in jail constitute incontestable evidence of his helplessness in the toils of the law, and that his situation was such that the failure of the judge to assign counsel to aid him in his defense, denied to him due process of law and the equal protection of the laws, in violation of rights vouchsafed him by the Constitution of North Carolina and that of the United States.

Referring to the argument advanced by the defendant, based upon the expedition with which his trial was consummated, we are not inclined to hold that the mere fact that he was arrested 28 December, tried in Recorder's Court 31 December, and in the Superior Court during the term beginning 6 January, 1947, indicated such haste as would, without

more, constitute denial of due process. *Avery v. Alabama,* 308 U. S., 443. That was the regular course for the disposition of the case in the courts where it was properly cognizable. The reasons assigned for the decision in *S. v. Farrell,* 223 N. C., 321, 26 S. E. (2d), 322, a capital case, were applicable to the peculiar circumstances of that case and do not apply in all respects here. In that case the defense was insanity, and it was said "if the only issue to be tried was that of guilt or innocence, based on the facts of the alleged offense, ample time was allowed." The administration of justice "without denial or delay" is one of the supreme aims of social organization, but expedition is not to be sought at the expense of rights of the individual guaranteed by the Constitution. *S. v. Ross,* 193 N. C., 25, 136 S. E., 193; *S. v. Whitfield,* 206 N. C., 696, 175 S. E., 93.

The question whether under the laws and approved procedure in this State the ignorance of the defendant and his unfamiliarity with legal matters were alone sufficient to render mandatory the provisions in the Constitution and statutes of North Carolina for the assignment of counsel, and whether failure to do so in a case of robbery constitutes a denial of constitutional rights must be answered in the negative. His trial was before a fair and patient judge and by a jury of the vicinage, and no evidence is offered to rebut the presumption of the regularity of the trial. *S. v. Harris,* 204 N. C., 422, 168 S. E., 498.

The Constitution of North Carolina, Art. I, sec. 11, contains this provision: "In all criminal prosecutions every man has the right to be informed of the accusation against him and to confront the accusers and witnesses with other testimony, and to have counsel for his defense, and not be compelled to give evidence against himself, or to pay costs, jail fees, or necessary witness fees of the defense, unless found guilty." And this constitutional provision is further implemented by statute (G. S., 15-4) in these words: "Every person accused of any crime whatsoever, shall be entitled to counsel in all matters which may be necessary for his defense."

In capital felonies these provisions relative to counsel are regarded as not merely permissive but mandatory. This is indicated by the statute, G. S., 15-5, and by numerous decisions of this Court. *S. v. Collins,* 70 N. C., 242; *S. v. Jacobs,* 107 N. C., 772, 11 S. E., 962; *S. v. Hardy,* 189 N. C., 799, 128 S. E., 152; *S. v. Whitfield,* 206 N. C., 696, 175 S. E., 93; *S. v. Farrell,* 223 N. C., 321, 26 S. E. (2d), 322; *Powell v. Alabama,* 287 U. S., 45. But in cases of misdemeanors and felonies less than capital it has been the uniform practice in this jurisdiction to regard these provisions as guaranteeing the right of persons accused to have counsel for their defense, to be represented by counsel, and the right to have counsel assigned if requested and the circumstances are such, for

financial or other reasons, as to show the apparent necessity of counsel for the protection of the defendant's rights.

But we cannot hold that in all cases, in the absence of any present statute to that effect, the burden is imposed upon the state to provide counsel for defendants. In cases less than capital the propriety of providing counsel for the accused must depend upon the circumstances of the individual case, within the sound discretion of the trial judge. In the language of *Justice Holmes* in *Lockner v. New York,* 198 U. S., 45, "General propositions do not decide concrete cases."

The Constitution of North Carolina further in general and comprehensive terms safeguards the rights of the individual by declaring that no person shall be deprived of his life, liberty or property "but by the law of the land" (Art. I, sec. 17), and the expression "law of the land" has been held equivalent to the due process of law required by the Fourteenth Amendment to the Constitution of the United States. The expression quoted means "the general law, the law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial." Conner and Cheshire's Constitution, pg. 56; *Markham v. Carver,* 188 N. C., 615, 125 S. E., 409. It means the regular course of the administration of justice through the courts of competent jurisdiction, after the manner of such courts. *Caldwell v. Wilson,* 121 N. C., 425, 28 S. E., 554. Procedure must be consistent with the fundamental principles of liberty and justice. *Hebert v. Louisiana,* 272 U. S., 312 (316).

Reversal of the judgment below denying the defendant's motion for new trial is urged on the ground that in his prosecution, conviction and sentence in the trial in the Superior Court he was denied the due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States and by other constitutional provisions.

While it is well settled that the references in the Fifth Amendment to the Federal Constitution to due process of law, as well as the provisions in the Sixth Amendment declaratory of the right of the accused in a criminal prosecution to have the assistance of counsel, are to be regarded as applicable only to trials in Federal Courts, the provision in the Fourteenth Amendment against denial of due process to a litigant is made directly applicable to State's action in judicial proceedings as well as through other agencies of the State. It was said in *Betts v. Brady,* 316 U. S., 455, "The phrase (due process of law) formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights." The purpose of these provisions as they relate to judicial procedure is to insure fundamental fairness.

It was argued by defendant's counsel that the failure of the trial court to appoint counsel for the defendant's defense and the speed with which

the trial was conducted to its conclusion, coupled with evidence of the youth and inexperience of the defendant, constituted denial of due process of law. Cited in support of this position are the cases of *White v. Ragan,* 324 U. S., 760; *Rice v. Olson,* 324 U. S., 786; *Williams v. Kaiser,* 323 U. S., 471; *Tomkins v. Missouri,* 323 U. S., 485; *De Meerleer v. Michigan,* 91 Law Ed. Adv. Opinions, 471; *Smith v. O'Grady,* 312 U. S., 329. It was insisted that the facts shown in the case at bar are such as to bring it within the principle announced in those and other similar cases. However, it may be noted that in *White v. Ragan, supra,* the Court's opinion was predicated upon allegations by the defendant, uncontradicted, showing bad faith on the part of assigned counsel, sanctioned by the ruling of the judge, and the procurement of testimony known to be false by the prosecuting attorney. And in *Rice v. Olson* the state court held the defendant's plea of guilty, though alleged to have been unfairly entered, constituted an absolute waiver of defendant's rights. In *Williams v. Kaiser* and *Tomkins v. Missouri,* both from the State of Missouri, the statute of that state required the assignment of counsel. In the most recent case on the subject *De Meerleer v. Michigan, supra,* the facts recited by the Court were that the defendant was 17 years of age, was without counsel, and was not advised of his rights, and further that on the same day defendant was arraigned, tried, convicted and sentenced to life imprisonment. In *Smith v. O'Grady* it appeared that remedy in the state court was denied defendant without determining the truthfulness of his allegation that he was without counsel and was "tricked" into pleading guilty.

From an examination of the cited cases and others of like nature recently considered by the Supreme Court of the United States it appears that these decisions were in the last analysis determined on the basis of the facts in each case. Said *Justice Roberts* in *Betts v. Brady, supra,* "Asserted denial (of due process) is to be tested by an appraisal of the totality of facts in a given case." And in the recent case of *Carter v. Illinois,* 91 Law. Ed. Adv. Op., 157, it was said: "But the Due Process Clause has never been perverted so as to force upon the forty-eight States a uniform code of criminal procedure. Except for the limited scope of the federal criminal code, the prosecution of crime is a matter for the individual States. The Constitution commands the States to assure fair judgment. Procedural details for securing fairness it leaves to the States. It is for them, therefore, to choose the methods and practices by which crime is brought to book, so long as they observe those ultimate dignities of man which the United States Constitution assures."

In *Betts v. Brady,* 316 U. S., 455, the Court, after reviewing the statutory and constitutional provisions as to appointment of counsel in criminal cases in the several states, announced this conclusion: "This material demonstrates that, in the great majority of the states, it has been the

considered judgment of the people, their representatives and their courts that appointment of counsel is not a fundamental right, essential to a fair trial. On the contrary, the matter has generally been deemed one of legislative policy. In the light of this evidence we are unable to say that the concept of due process incorporated in the Fourteenth Amendment obligates the states, whatever may be their own views, to furnish counsel in every such case. Every court has power, if it deems proper, to appoint counsel where that course seems to be required in the interest of fairness."

The allegations in defendant's petition and affidavits are not to be accepted as presenting a statement of all the facts, or necessarily as one entirely correct, since upon the hearing on defendant's motion other evidence was offered by the State, and upon all the evidence findings of fact were made by the court. These come to us as determinative. It is an established rule in this jurisdiction that findings of fact made by a Superior Court judge as to matters within his jurisdiction and properly cognizable by him, when based on evidence presently presented, must be held conclusive on appeal. *In re Hamilton,* 182 N. C., 44, 108 S. E., 385. His findings import verity. Hence, on the record before us our decision must be based on the facts as found and reported in the judgment below.

After a careful examination of the record in this case and of all the facts which have been made to appear, giving due consideration to the constitutional principles invoked as judicially interpreted by the Supreme Court of the United States, we conclude that none of the fundamental rights essential to a fair trial have been denied the defendant, and that the judgment overruling defendant's motion must be upheld, and the

Judgment affirmed.