The order appealed from related to the disposition of a quantity of intoxicating liquor seized in the possession of the defendant Hall. From an order adjudging the interpleader, Roadway Express, Inc., entitled to the immediate possession of the liquor, the State appealed.
The defendant Bert Hall was charged in the recorder's court of Cumberland County with unlawful possession and transportation of 323 cases of intoxicating liquor. To this charge he pleaded guilty, and judgment was thereupon rendered imposing sentence on him, and also, in accordance with the North Carolina statute, decreeing confiscation and forfeiture of the liquor. From this judgment there was no appeal. The judgment was dated 27 February, 1943.
Shortly thereafter Roadway Express, Inc., filed a petition and interplea in the cause in the recorder's court alleging title to the 323 cases of liquor as bailee, and asked that immediate possession thereof be surrendered to it. It was set out in the petition, in substance, that the intervening petitioner was an Ohio corporation engaged in the motor trucking business as a common carrier in interstate commerce; that on 22 February, 1943, it leased from McElveen Motor Freight Lines a Ford truck and trailer for the transportation of a cargo of whiskey, including the 323 cases, from the Frankfort Distilleries, Inc., Baltimore, Md., consigned to Vincent Chicco, Charleston, S.C., the truck being operated by the defendant Bert Hall; that en route, due to motor trouble, the truck was stopped in Cumberland County, N.C. and some of the liquor having been disposed of the defendant Hall was indicted and convicted, and the liquor ordered confiscated; that petitioner had no knowledge of any unlawful acts on the part of Hall, who was an employee of McElveen Motor Freight Lines, and did not authorize him to maintain possession of the liquor except for the purpose of operating the truck and transporting the shipment from Baltimore to Charleston; that proper shipping papers were issued at the time of making the shipment, and that petitioner is owner of or bailee of the 323 cases of liquor. No bond was filed, nor was stay of execution of the recorder's judgment or impounding of the liquor requested. *Page 316 
On 2 March, 1944, more than a year later, the matter came on for hearing before the recorder, who, after hearing evidence and argument on the petitioner's claim, entered judgment overruling the motion and interplea of Roadway Express, Inc., and confirmed the disposition of the liquor as ordered in the original judgment in the criminal action. The petitioner appealed to the Superior Court upon the ground that the judgment was contrary to the evidence and the law, and violative of the Fifth Amendment to the Constitution of the United States.
At the hearing before the judge of the Superior Court, the pertinent circumstances of the transportation and seizure of the liquor in question were made to appear, substantially, as follows: 25 February, 1943, the Ford truck and trailer containing the liquor was discovered at a filling station near Fayetteville, N.C. backed up close to another truck apparently abandoned. Two men were rolling one of the trucks from the rear of the other. The Ford truck was an enclosed type without lock or fastening on the rear doors. There was no seal on the truck and no interstate commerce license number in view. The truck contained 323 cases of whiskey, labeled "Paul Jones," "Four Roses," and "M and M," all in pint and half-pint bottles. South Carolina revenue stamps were attached, but no North Carolina A. B. C. stamps. There were two broken cases in the lot, one of those was short 12 one-half pints and the other 18 pints. Around the truck were empty cartons and pieces of cartons, similar to those in the truck, showing same brand. A manifest stuck in the dash board called for 330 cases of whiskey and designated Vincent Chicco as consignee. On a paper under letterhead of McElveen Motor Freight Lines appeared the following: "Trailer sealed at Frankfort Distilleries. Seal #19928. Compensation $100 — balance due $69.49 to be paid at Charlotte, N.C. upon clear delivery receipt, return of lease form and yellow manifest form with logs. Freight represented by above freight bills received by (signed) Bert Hall, driver." On the freight bill the destination was first written "Charlotte," and that stricken out and "Charleston" written under. None of the cartons bore designation of consignee or consignor. The whiskey was not being transported to or from a North Carolina A. B. C. store.
Bert Hall, the driver, stated the truck was never sealed or locked; that his employer was S. L. Stevenson, of Columbia, S.C., operating as McElveen Motor Freight Lines; that when his truck was disabled he was instructed by Stevenson to take another truck similarly loaded, which had accompanied him from Baltimore, and drive it to Columbia, leaving the driver of the other truck in charge of the broken truck; that he did this, and came back to Fayetteville. When he came back to Fayetteville he was "ordered to pull that load of whiskey to Columbia." *Page 317 
It was in evidence from an employee of the filling station that the Ford truck containing the liquor in question, and an International truck driven by a red-headed young man, arrived at the filling station near Fayetteville, 23 February, the Ford truck disabled. Both drivers were drinking and defendant Hall gave this witness a pint of whiskey from which he became intoxicated. Other people around the station were drinking Paul Jones and Four Roses whiskey. The next day the International truck was gone, but the Ford truck and red-headed driver in charge were still there. This driver was disposing of the whiskey, and witness saw him carry off 16 bottles in a sack, which he said he was going to sell.
Petitioner offered the evidence of its manager, B. H. Ways, tending to show that 19 February, 1943, it was offered by Frankfort Distilleries, Inc., a shipment of liquor for Charleston, S.C.; that the Roadway Express, having no equipment available, entered into a leasing agreement 22 February, 1943, with Bert Hall, agent for McElveen Motor Freight Lines and operator of the latter's truck and trailer; that Bert Hall took the truck and trailer to the warehouse of the Distilleries Company where 330 cases of whiskey, the property of the Distilleries Company, were loaded to be transferred by the Distilleries Company to Vincent Chicco; that the bill of lading included also another shipment of liquor to Columbia, S.C., which was included for the purpose only of affecting the freight rate; that there accompanied the bill of lading a dray ticket for the cargo on the truck operated by Hall indicating 330 cases of whiskey from Baltimore to Charleston; that the cargo on the other truck was routed direct to Columbia; that Bert Hall was instructed to take the cargo to Charleston without stop en route and upon delivery McElveen Motor Freight Lines was to have been paid by Roadway Express for use of its equipment; when the cargo was loaded it was found that the trailer could not be sealed or its door fastened, and Hall was cautioned not to leave the cargo unprotected. There was also evidence from employees of the Frankfort Distilleries, Inc., that 330 cases were duly checked as loaded on the truck consigned to Frankfort Distilleries, Inc., Charleston, S.C., for distribution by Vincent Chicco.
It was stated in the argument in this Court that in accordance with the order of the recorder the whiskey seized had been sold by the Cumberland County A. B. C. Board. The proceeds of sale presumably were placed in the school fund (G.S., 18-13). The question of the proper disposition of the liquor or proceeds of sale is not presented or considered. It was also stated the truck and trailer had been released by order of court on the petition of the Credit Company which held a valid lien thereon. *Page 318 
Upon the evidence presented the court below found that the operator of the truck was not authorized to maintain possession of the contents except for the purpose of transporting the same from Baltimore to Charleston, and that the shipment was in interstate commerce undertaken by the petitioner in good faith; that interpleader had not been convicted of violation of any law pertaining to the handling of intoxicating liquor and had violated no law or regulation with respect to the transportation of the aforesaid cargo. It was thereupon ordered that the judgment of the recorder be overruled, and that Roadway Express, Inc., as bailee, was entitled to the immediate possession of the 323 cases of whiskey. To this order the State and the Cumberland County Alcoholic Beverage Control Board excepted, and appealed.
The judgment below, from which the State appealed, denied the power of the court to enforce the provisions of the statute with respect to a quantity of intoxicating liquor which had been seized by State officers while being unlawfully possessed and unlawfully transported in the State by the defendant Bert Hall. The ruling appealed from was based on the ground that the liquor was being transported in interstate commerce and was therefore protected from seizure for unauthorized acts of the persons in possession, however unlawful.
In the consideration of the question thus presented we note at the outset that the defendant Bert Hall, who was in the possession of the seized liquor at the time he was arrested for unlawful acts with respect thereto, pleaded guilty to charges of unlawful possession and unlawful transportation of this liquor. Thereupon personal judgment was rendered against him, and, in accord with the mandatory provisions of the statute, the judgment also ordered the confiscation and forfeiture of the liquor so unlawfully possessed and transported. G.S., 18-6. From this judgment Hall did not appeal.
From an examination of this and other related statutes it will be observed that ample provision is made for determining right of possession of innocent claimants in case of seizure of vehicles used in the unlawful possession and transportation of intoxicating liquor, but the liquor itself is not included in this category. The absence of such provision in the matter of seized liquor, together with the requirement that it be destroyed, would seem to indicate the legislative intent that the *Page 319 
liquor itself when the subject of unlawful traffic and as capable of harmful effects offends the law and should be regarded as a nuisance and contraband, to be summarily destroyed or otherwise disposed of. 30 Am.Jur., 541. Only in case of failure to establish a violation of law is the restoration of the liquor permitted. G.S., 18-13. However, in accord with approved practice the processes of the courts of North Carolina are available to anyone legally interested to present his claim for the possession of seized liquor, and his plea will be heard. S. v. Gordon,ante, 304.
In this case petitioner, after filing his interplea, waited more than a year before prosecuting his claim, at which time the liquor had been disposed of in accordance with the recorder's judgment. However, the adjudication on appeal in the Superior Court in petitioner's favor is challenged by the State on behalf of the public agencies directly involved. Thus the question of the propriety of the judgment declaring petitioner entitled to the immediate possession of the described liquor is now presented to this Court for determination.
The North Carolina statutes have banned the transportation of intoxicating liquors within its borders except in restricted instances, and declared its possession in quantity unlawful except under special circumstances not here pertinent. G.S., 18-2. Both by the Constitution of the United States (Amendment XXI), and the State statutes liquor has been placed in a category in some respects different from that of other articles of commerce, and the State's regulations aimed at the suppression of its prohibited transportation and unlawful possession should not be held obnoxious to the interstate commerce clause of the United States Constitution unless clearly in conflict with granted Federal powers and congressional action thereunder.
The evidence heard below reveals as one of the significant circumstances attending this shipment that the truck leased by petitioner and in which the liquor was being transported had no fastening, lock or seal on its doors, and that none of the packages of liquor were anywhere labeled to show the name of the consignee, in violation of the express provisions of the Federal statute. 18 U.S.C.A. sec. 390. Thus a cargo of whiskey without legal safeguards, in small bottles, was being transported in an open truck within the State in violation of State laws, and handled in such a manner as to facilitate the convenient disposal of the liquor. Clearly the shipment was being diverted from permitted channels. As a result, after the truck had remained in Fayetteville some three days seven cases of liquor had been disposed of and those having custody for the carrier were actively engaged in selling it.
Under these circumstances, was the seizure of the liquor and the arrest of the person in charge an unlawful interference with interstate commerce, *Page 320 
or did it deprive the petitioner of property without due process of law, or take its property for public use without just compensation?
The record in this case discloses that under the State law and in a court of competent jurisdiction, the person in the actual possession of a large quantity of intoxicating liquor has been adjudged guilty of unlawful possession and unlawful transportation thereof within the State. This conviction entailed not only a personal penalty against the person, but brought the liquor itself, when thus being unlawfully possessed and transported, within the condemnation of the law, which requires its destruction or expropriation for the benefit of the public school fund.
Thus we are dealing with a case in which North Carolina is undertaking to enforce her own laws. Carter v. Virginia, 320 U.S. ___ (88 Law. Ed., 387). The State can lawfully impose restrictions upon the interstate transportation of liquor through its borders by requiring permits, bonds or the designation of definite routes of travel. Carter v. Virginia, supra;Johnson v. Yellow Cab, 88 Law. Ed., 553; Duckworth v. Arkansas,314 U.S. 390, 86 Law. Ed., 294. We see no reason to deny the right of the State to enforce its laws with respect to this shipment of liquor, under the circumstances here presented, notwithstanding the liquor was ostensibly designated for a destination beyond the State. We think it was subject to immediate seizure. Ziffrin v. Reeves, 308 U.S. 132.
In the case last above cited, where it was sought in a U.S. District Court to restrain the enforcement of the contraband and penal provisions of a state statute of Kentucky regulating the transportation of intoxicating liquor, it was said by a unanimous Court, "Without doubt a state may absolutely prohibit the manufacture of intoxicants, their transportation, sale, or possession, irrespective of when or where produced or obtained, or the use to which they are to be put. Further, she may adopt measures reasonably appropriate to effectuate these inhibitions and exercise full police authority in respect of them .... The state may protect her people against evil incident to intoxicants, Mugler v. Kansas, 123 U.S. 623;Kidd v. Pearson, 128 U.S. 1, and may exercise large discretion as to means employed."
The effort to exercise control in the public interest over the traffic in intoxicating liquor has been attended with difficulty, "due," as said byChief Justice Stone in Duckworth v. Arkansas, supra, "to its tendency to get out of legal bounds." Here, the judgment of the recorder upon the evidence in this case in ordering the confiscation of the liquor was in compliance with the mandatory provisions of the North Carolina statute and should have been upheld. *Page 321 
We think the controlling principle of law to be applied here is that when a cargo of intoxicating liquor, though started on its way as an interstate shipment, is diverted to unlawful purposes in violation of the law of the state in which it has come to rest, the initial character of the shipment does not clothe those in possession with immunity from prescribed penalties or oust the jurisdiction of the state courts, either as to person or property. This was the rule laid down in the recent case of S. v.Gordon, ante, 304.
We note further that the record does not disclose the real ownership of the whiskey seized. Neither the Frankfort Distilleries, Inc., by and to whom it was consigned, nor Vincent Chicco to whom it was to be delivered for distribution, has interposed any claim for it. The only claim for its release is filed by Roadway Express as bailee. It is a familiar principle that a bailee may sue a third person for interference with the bailment. But in order to entitle him to do so he must have been in possession of the goods at the time of the trespass. 8 C. J. S., 317; R. R. v. Baird,164 N.C. 253, 80 S.E. 406. "Possession and control are essential elements in the law of bailment," said Justice Brown in Matthews v. R. R.,175 N.C. 35, 94 S.E. 714. Here the situation was somewhat complicated by the method employed, whether by accident or design, in handling the shipment. It appears that petitioner, a motor carrier which had handled many shipments of liquor for the Frankfort Co. to South Carolina and Georgia, accepted this shipment, but not having available equipment, leased or rented for the transportation of this whiskey to Charleston a truck belonging to McElveen Lines and operated by Bert Hall. In the petition it was alleged that Hall was an employee of McElveen Lines. The written lease signed by Bert Hall stated that possession and control of the truck was leased to Roadway Express. It was stipulated that "while the equipment is under the direction and control of Roadway Express, Inc., it shall be operated by lessor (McElveen) or his representative while in the employ of Roadway Express, Inc." Roadway Express agreed to pay compensation for rental and wages. If Bert Hall were an independent contractor in the operation of his truck, then petitioner could not be said to have been in actual possession of it at the time of the seizure. That is, if Roadway Express, though the shipment was offered to and accepted by it, merely turned it over to another for uncontrolled handling, it could not sustain its claim as bailee. On the other hand, if a simple agency resulted from the contract of lease, and Hall were merely the alter ego of the Roadway Express, it as principal can occupy no superior position with respect to third parties and must suffer for the fault of the agency which it has created. Neither Bert Hall nor his employer or lessee can claim immunity from the penalty invoked by his unlawful conduct. *Page 322 
The Twenty-first Amendment to the Constitution of the United States removes the protection afforded interstate commerce only from shipments into a dry state, but does not affect shipments through such state. U.S.v. Gudger, 249 U.S. 373. However, congressional action under the Interstate Commerce Clause of the Constitution does render the things done and omitted by the petitioner itself as well as by its agent, Bert Hall, in this case, criminal offenses under Federal law (18 U.S.C.A. 390, amended 25 June, 1936). When these violations of Federal statutes also give rise to and result in violations of state laws, the offender may not be heard to complain of the unfavorable result.
The order of the court below, entered more than a year after the seizure, declared Roadway Express, Inc., as bailee, entitled to the immediate possession of the 323 cases of whiskey. However, the record discloses that this whiskey had long before been ordered confiscated and sold. It is admitted this has been done. Presumably the proceeds have been covered into the public school fund. It appears, therefore, that the subject matter of the order is no longer in existence, and the effect of the order could only be construed as affording ground for further action by the real party in interest with respect to the proceeds. In that event it is manifest that a claim against the state or its agency for reimbursement could not be prosecuted in this action by the petitioner.
This case differs in material respects from Johnson v. Yellow CabTransit Co., 88 Law. Ed., 553. In that case liquor being transported through the State of Oklahoma en route to the U.S. Military reservation of Fort Sill was seized by state officers. No action, criminal or civil, was pending or commenced in state courts, and claimant brought suit in the U.S. District Court against the state officers for a mandatory injunction for return of the liquor. There was no evidence of violation of law by those from whom the liquor was seized while in the State of Oklahoma.
Exceptions were noted to the findings of the court below. In so far as these findings are not in accord with the record or supported by the evidence, the exceptions are sustained.
For the reasons herein stated, the judgment is
Reversed. *Page 323