No error.

IN RE INTERVENTION IN STATE v. JOHN GORDON.

(Filed 6 June, 1945.)

**1. Intoxicating Liquor §§ 4b, 7, 8—**

Where a truck-load (579 cases) of intoxicating liquor, in the possession of a common carrier, was lawfully passing through this State in interstate commerce and the agent in charge was arrested here, prosecuted and convicted for unlawful possession and transportation, without naming any amount, and the entire truck-load ordered confiscated, upon intervention by the common carrier, within the time prescribed by the court order, alleging that at no time was its possession changed or broken, or the character of the shipment altered and that, if its agent committed

IN RE STATE *v.* GORDON.

any illegal act, it was confined to seven cases of the liquor, such intervener is entitled to a full opportunity to be heard and to present evidence on its allegations, and there was error in the court's entering judgment on the pleadings and on the record in the criminal case.

**2. Intoxicating Liquors §§ 7, 8—**

The statute, G. S., 18-6, provides, not for the seizure of any and all intoxicating liquor found in the vehicle, but for the seizure of any and all intoxicating liquor found therein being transported contrary to law.

**3. Carriers § 3: Constitutional Law § 25b—**

Interstate commerce is protected by Federal law, but the semblance of it is not to be used to circumvent the State law.

**4. Intoxicating Liquors § 7—**

The Supreme Court of the United States has decided that intoxicating · liquor is a legitimate subject of commerce, within the protection of the Commerce Clause; and, in the absence of regulation by Congress, its movement therein is like that of all other merchantable goods, free from State control.

**5. Constitutional Law § 15a—**

Absence of notice or opportunity to be heard violates the due process of law provision.

**6. Same—**

The basic elements of a fair and full hearing on the facts include the right of each party to be apprised of all the evidence upon which a factual adjudication rests, plus the right to examine, explain or rebut all such evidence.

**7. Intoxicating Liquors § 8—**

While G. S., 18-6, provides only for a hearing in respect of the seized vehicle used in transporting intoxicating liquor contrary to law, because thereunder the liquor itself is to be destroyed, G. S., 18-13, provides for the return of the seized liquor to the established owner, upon the acquittal of the person charged with unlawful possession of such liquor, otherwise it may be turned over to the county commissioners for disposition· as therein provided; and this latter statute clearly contemplates a hearing in the criminal case to determine the "established owner" or rightful claimant. This remedy appears adequate and is approved.

DEVIN, J., concurring.
BARNHILL, J., concurring.
SEAWELL, J., dissenting.

APPEAL by intervener from *Burgwyn, Special Judge,* at November Term, 1944, of WAKE.

Intervention by common carrier, Atlantic States Motor Lines, Inc., to obtain possession of whiskey seized in the case of *State v. John Gordon,* 224 N. C., 304, 30 S. E. (2d), 43.

IN RE STATE v. GORDON.

At the time of his arrest by the officers of Wake County on 10 July, 1943, John Gordon was driving a truck which had been leased by the petitioner for the purpose of transporting 579 cases of tax-paid Calvert Whiskey—a part of an interstate shipment—from Baltimore, Md., to Charleston, S. C. Gordon was prosecuted on a warrant charging him, in three counts, (1) with the unlawful transportation of "intoxicating liquors," (2) with the unlawful possession of "intoxicating liquors," and (3) with the unlawful possession of "intoxicating liquors" for the purpose of sale. He was convicted, and the entire truck load of whiskey, consisting of 579 cases, was ordered confiscated.

The criminal prosecution was tried upon the theory and instruction that notwithstanding the interstate character of the shipment, if the jury were "satisfied beyond a reasonable doubt that while it was in this county, John Gordon took possession of it and had it in his possession for the purpose of sale, it would be your duty to find him guilty."

. The verdict was: "Guilty as charged in the warrant on all three counts."

It is the contention of the petitioner that at no time was its possession of the shipment ever changed or broken; or the character of the interstate shipment in any way altered; "and further, in the alternative, that if John Gordon ever committed any illegal act or had any illegal intent with respect to any part of such whiskey said act and said intent was confined in its scope to not more than 7 cases of whiskey."

The petitioner sought to appear at the trial and protect its interest, as both consignor and consignee were looking to it and insisting upon delivery in accordance with the original bill of lading. This was denied except upon condition, which the petitioner did not feel at liberty to accept.

In the order of confiscation, provision was made that any and all persons claiming an interest in the matter might come in and assert their rights within thirty days. The petitioner duly intervened in the time allowed.

In upholding the conviction of John Gordon, it was observed that the petitioner had been granted an opportunity to present its claim, which had not been heard, and that "it should have full opportunity to be heard."

When the matter came on for hearing at the November Civil Term, 1944, Wake Superior Court, the petitioner moved for judgment by default on its petition. The court "on hearing the motion, overruled the same," and granted the motions of the Board of Education of Wake County and the Board of Education of Chatham County "for judgment on the pleadings, and on the record in the criminal case." The court thereupon found certain facts from the record in the criminal case and

adjudged that the petition of the Atlantic States Motor Lines, Inc., "be and the same is hereby denied . . . that the whiskey seized in this case be confiscated in accordance with the former order of this court, and this cause is retained for a determination of the rights of the Board of Education of Wake County and the Board of Education of Chatham County to the proceeds derived from a sale of the whiskey herein ordered confiscated."

From this order the petitioner appeals, assigning errors.

*Horace Haworth and William T. Joyner for intervener, Atlantic States Motor Lines, Inc., appellant.*

*Walter D. Siler and W. P. Horton for Board of Education of Chatham County, appellee.*

*William Y. Bickett and L. S. Brassfield for Board of Education of Wake County, appellee.*

STACY, C. J. We said on the former appeal that the common carrier was entitled to a hearing on its petition. Has this been accorded? The appellant says not, as the matter was determined on counter-motions based on the record in the criminal case, to which it was not a party.

It is provided by G. S., 18-6, that when any officer of the law shall discover any person in this State in the act of transporting, in violation of law, intoxicating liquor in any wagon, buggy, automobile, water or air craft, or other vehicle, "it shall be his duty to seize any and all intoxicating liquor found therein being transported contrary to law," take possession of the vehicle and team or conveyance and arrest the person in charge thereof. And further, upon conviction of the person so arrested, the court "shall order the liquor destroyed," unless it be tax-paid liquor, in which event it is to be disposed of in accordance with the provisions of G. S., 18-13. Section 18-48 also provides for the forfeiture of nontax-paid liquor, unlawfully possessed, together with the vehicle used in its transportation, etc. *S. v. Davis,* 214 N. C., 787, 1 S. E. (2d), 104.

The question then arises whether all the whiskey found in the truck driven by John Gordon, or only a part of it, was "being transported contrary to law." This question was neither mooted nor determined in the trial of the criminal prosecution, since it was immaterial under the language of the warrant. It was initially raised by the intervener.

If a truck load of produce or merchandise were passing through the State in interstate commerce and the agent in charge should pilfer a small quantity and offer it for sale, it would hardly be contended the entire truck load had thereby lost its character as an interstate shipment. And while the same reasoning applies to a truck load of intoxicating

liquor, lawfully passing through the State in interstate commerce, the ease with which the particular commodity seems to find its way into forbidden channels makes it a problem subject, both in the field of legislation and law enforcement. *Duckworth v. Arkansas,* 314 U. S., 390, 86 L. Ed., 294. Also, as might be expected, the ascertainment of the legislative will on the subject is sometimes fraught with difficulty. Hence, the one duty of the courts is to hold the balance "nice, clear and true," and let the result be as it may. *Tumey v. Ohio,* 273 U. S., 210, 50 A. L. R., 1243; *In re Steele,* 220 N. C., 685, 18 S. E. (2d), 132. Interstate commerce is protected by Federal law, but the semblance of it is not to be used to circumvent the State law. *S. v. Davis, supra.* Nor is the innocent to be punished or the guilty allowed to escape. In other words, justice is to be administered regardless of the character or subject matter of the controversy.

In the instant case the driver of the truck was arrested and charged with the unlawful possession and transportation of "intoxicating liquors," without naming the amount. The extent of his illegal intent and acts, therefore, was not at issue on his trial. The jury was instructed that notwithstanding the character of the shipment, whether interstate or not, if Gordon "took possession of it and had it in his possession for the purpose of sale," the duty would devolve upon the jury to find him guilty. The quantity of "intoxicating liquors" which he took into his possession for the purpose of sale was neither specified nor considered. The statute provides, not for the seizure of any and all intoxicating liquor found in the vehicle, period, but for the seizure of "any and all intoxicating liquor found therein being transported contrary to law." The intervener says that while Gordon may have filched a small part of the cargo, which the jury has found was "being transported contrary to law," still the bulk of the shipment was being transported in interstate commerce and under sanction of the law. *Johnson v. Yellow Cab Transit Co.,* 321 U. S., 383, 88 L. Ed., 814. The Supreme Court of the United States "in a long series of cases . . . decided that intoxicating liquor is a legitimate subject of commerce . . . and as such within the protection of the Commerce Clause. In the absence of regulation by Congress, the movement of intoxicants in interstate commerce, like that of all other merchantable goods, was 'free from all state control' "—*Mr. Justice Frankfurter* (concurring) in *Carter v. Virginia,* 321 U. S., 131, 88 L. Ed., 605.

In deference to the jury's finding, but without conceding loss of its right thereto, the intervener foregoes any claim to the part which it says was purloined. It insists, however, that the allegations of fact set out in its petition should be determined in keeping with the requirements of due process and agreeably to the law of the forum. *Morgan v. U. S.,*

304 U. S., 1, 82 L. Ed., 1129. These allegations remain undetermined on the record, since the judgment was entered on counter-motions, without any evidence being taken, or any hearing had on the petition other than the motion for judgment by default, which was overruled. "It is a sound and just principle of law and one worthy of acceptation that 'absence of notice or opportunity to be heard, violates the due process of law provision' "—*Brogden, J.,* in *Hart v. Comrs.,* 192 N. C., 161, 134 S. E., 403.

Seemingly the facts alleged by the intervener were overlooked or disregarded. They are quite sufficient to survive a demurrer or to withstand the counter-motions for judgment on the petitions. There was no agreement upon the facts or that the judge should find the facts from the record in the criminal case. Indeed, the matter now at issue was neither in focus nor decided on that record; otherwise the right to a full hearing would hardly have been announced as the law of the case when it was here on the former appeal. The same petition was before us at that time. "The basic elements" of a fair and full hearing on the facts "include the right of each party to be apprised of all the evidence upon which a factual adjudication rests, plus the right to examine, explain or rebut all such evidence"—*Mr. Justice Murphy* in *Carter v. Kubler,* 320 U. S., 243, 88 L. Ed., 26.

The procedure here followed—the same as in other cases—is authorized by order of the Superior Court entered herein and was approved in our former opinion. It is now suggested that the petition should be dismissed and the intervener remitted to equity for its relief. *McCormick v. Proctor,* 217 N. C., 23, 6 S. E. (2d), 870. The basis of the suggestion is that G. S., 18-6, provides only for a hearing in respect of the seized vehicle used in transporting intoxicating liquor contrary to law, and then "with the right on the part of the claimant to have a jury pass upon his claim." The statute is so framed because by the terms of this section the liquor itself is to be destroyed. But in section 18-13 provision is made for the return of the seized liquor to the established owner upon the acquittal of the person so charged, otherwise it may be turned over to the board of county commissioners for disposition as therein provided. Thus this latter section clearly contemplates a hearing in the criminal case to determine the "established owner" or rightful claimant to the liquor. The parties have not questioned the appropriateness of the procedure. The remedy appears to be adequate for the purpose. Anyhow, it has been approved in this case. 30 Am. Jur., 539 and 550. The procedural provisions of section 18-6 are specifically referred to in section 18-48 and made applicable to proceedings thereunder. 30 Am. Jur., 552.

There is no challenge here of any North Carolina law on the subject of intoxicating liquor. The intervener alleges, and at every turn in the case has contended, that the whiskey in question was lawfully moving in interstate commerce, and was therefore beyond the reach of the local law. This is the only issue raised by the intervention. It was not determined in the criminal case. The complete good faith of the carrier is in no way questioned. *Johnson v. Yellow Cab Transit Co., supra.*

The controversy then ranges to whether the liquor in excess of the seven cases shall continue in interstate transportation or be forfeited and sold in North Carolina. The intervener is seeking to recover the shipment in order to discharge its obligations as a common carrier. The respondents are asking that it be sold and the proceeds turned over to the appropriate school fund. There is no apparent reason why the pertinent facts should not be duly ascertained and the law properly applied as in other cases. 30 Am. Jur., 552. If the allegations of the petition be true, the liquor in question is not subject to condemnation under the statute. And as between a summary disposition of the matter and an adequate hearing on the merits, there appears little ground for debate, if established principles are to be observed. *Harrell v. Welstead,* 206 N. C., 817, 175 S. E., 283; *Markham v. Carver,* 188 N. C., 615, 125 S. E., 409.

The case is not like *S. v. Hall,* 224 N. C., 314, 30 S. E. (2d), 158, where the defendant was charged with the unlawful possession and transportation of the whole cargo—323 cases of intoxicating liquor—and he pleaded guilty to the offense ·as charged in the warrant. There the liquor "so unlawfully possessed and transported" was admittedly the whole cargo. Here the carrier contends that the faithlessness of Gordon in wrongfully extracting not more than seven cases of "intoxicating liquors" from an otherwise lawful interstate shipment, without its knowledge or consent, does not and cannot change the character of the entire shipment. The facts in respect of this position are yet undetermined. The subject of the intervention is lawful interstate transportation. Of course, if it should turn out to be something else, that is another matter. The carrier is entitled to make good its allegations, if it can. *S. v. Hall, supra.*

To this end the matter will be remanded for another hearing.

New trial.

Devin, J., concurring: The judge who heard the petition below found certain facts and adjudged that "the whiskey seized in this case"— the entire truck load of 579 cases—was subject to condemnation and confiscation under the laws of North Carolina, but in his judgment he based his findings entirely upon the record in the criminal case, and, apparently, without considering the facts alleged in the petition. A

remand for hearing and finding as to the allegations in the petition would seem to be in order.

But in agreeing to this disposition of the appeal I desire to call attention to certain significant facts that appear in the record of this case.

While the warrant under which Gordon was tried and convicted did not specify the quantity of whiskey he was charged with unlawfully transporting and possessing for the purpose of sale, the uncontroverted evidence disclosed that at the time of the arrest of Gordon, petitioner's truck driver, he was in the actual·possession of 579 cases of whiskey, all contained in a single vehicle, with no distinguishing marks or designations on any of the packages. Though Gordon was in the act of selling 7 cases only, the entire truck load was in his possession, and all of it equally open to disposition and sale. The witness Mills, who admitted intention to purchase 7 of the cases, had on his person at the time an amount in cash sufficient to buy a much greater quantity than 7 cases.

The facts shown in the trial of Gordon reveal unmistakable evidence to my mind that the method employed in this case, as also in the *Hall case,* was one of the frequently used means of distributing and selling unlawfully great quantities of intoxicating liquor throughout the State, and that the profits therefrom are enormous, as shown in the *Hall case* and the *Lippard cases.* Here we have a situation where a truck load of whiskey, valued at more than $20,000, was being transported in open violation of Federal regulation, without seals, fastenings or marks, and in such a way as to facilitate, without check, the sale of the contents of the truck en route. The driver was caught red-handed making one such sale. Under these circumstances, and with profits so large and apparently so easily obtained, does not a compelling inference arise that Gordon's purpose was to sell all the whiskey and that he therefore had 579 cases in possession for the purpose of sale? It would seem that a finding to that effect would have been justified.

The petitioner here claiming possession of the 579 cases is the lessee of the truck owner. It alone comes into court. Both the consignor and the consignee are conspicuous by their absence. Presumably, if it was a *bona fide* shipment, the title to the whiskey passed to the consignee upon delivery to a carrier. Doubtless the distiller received its pay when the whiskey left the warehouse. Who paid for it? Did the alleged consignee? If so, he would hardly have left to the trucker to make claim for so valuable a cargo. Significantly the petitioner trucker says in his petition, "your petitioner does not have sufficient information to form a belief as to which of the two (consignor or consignee) is the legal owner, but is informed and believes that there is lack of agreement between the

IN RE STATE *v.* GORDON.

two as to the title and ownership," and is informed and believes that both are looking to the petitioner for delivery.

The uncontroverted evidence in the *Gordon case* would seem to rebut the claim that this was a *bona fide* shipment in interstate commerce, but the court below has failed to make specific findings on this point, and as the jurisdiction of this Court is appellate its province in this instance is confined to review of the rulings of the Superior Court. Insufficient findings below require remand. I concur in that view.

BARNHILL, J., concurring: When this cause was here on the appeal of Gordon, *S. v. Gordon,* 224 N. C., 304, we held that on the record before us the petitioner was entitled to a hearing. We did not then attempt to limit or define the hearing to which it was entitled other than to call attention to the fact that this Court, at that time, had not decided whether the provision of G. S., 18-6, "the court, upon conviction of the person so arrested, shall order the liquor destroyed," is in the nature of a forfeiture or a confiscation as contraband. The question has since been decided. *S. v. Hall,* 224 N. C., 314.

"Confiscate" is ordinarily used to mean a transfer of property from private to public use or a forfeiture of the property to the State as an act of penal justice for the punishment of crime. *Skelley v. St. Louis & S. F. R. Co.,* 161 S. W., 877.

When the State acts against a rebellious citizen, who has violated the laws of the State, by confiscation of the property used in connection with or in furtherance of the crime committed, the chattel so confiscated is outlawed and becomes contraband in the nature of a public nuisance. It loses its quality as property subject to private ownership. To the extent the order is lawfully entered, it is good against the world and the right of ownership by private individuals ceases to exist.

Confiscation is invoked not only against liquor unlawfully possessed and transported, G. S., 18-6, 13, and 48, but also against gaming tables, punch boards and slot machines, G. S., 14-298, 299, property used in conducting bawdy houses, G. S., 19-1, and the like.

Why then is the petitioner entitled to be heard when Gordon has been duly convicted and the liquor found in his possession has been confiscated?

The original record in some respects is ambiguous. In the language of the street, it leaves the questions of interstate shipment and of the quantity of liquor being unlawfully possessed and transported "up in the air." These questions do not affect the guilt of Gordon, but they do, in a large measure, determine the extent to which the order of confiscation is legal and binding, and hence the extent of the rights of the petitioner.

Gordon was indicted, charged with the unlawful possession, transportation, etc., of "a quantity of intoxicating liquor." The evidence offered permits at least three inferences:

1. The cargo of liquor in his possession was not a *bona fide* interstate shipment. If not, the whole cargo was illegally possessed and transported. As to this, that the truck was not sealed and the packages were not labeled and the defendant spent much time around Raleigh and Apex constitute very suspicious, but not conclusive, circumstances.

2. Gordon, having the cargo in possession, while in Apex, agreed to sell Mills a part of the cargo and in furtherance of that agreement transported the whole cargo to a point on the Pittsboro road for the purpose of making delivery in accord with his unlawful agreement. Upon such finding it would follow that the whole load was unlawfully possessed and transported.

Those who deal in liquor know that it is prone to drift into unlawful channels. When a transportation company delivers to an agent a cargo of unlabeled liquor in an unsealed truck in violation of the Federal law, it takes the risk, and when the employee prostitutes the shipment to unlawful purposes, it must suffer the consequences.

3. The cargo was a *bona fide* shipment in interstate commerce and the employee in charge, while on his way on a regular or permissible route to his destination, came in contact with a bootlegger to whom he agreed to sell a part of the cargo, all without previous agreement. To accomplish his purpose he purloined or was in the act of purloining a few cases, without any intent to divert any other part of the shipment. If so, the unlawfulness of his act would relate only to the liquor he pilfered or intended to pilfer. The shipment was being transported in good faith in interstate commerce. The bailee transportation company was acting in good faith. The employee intended, in good faith, to complete the shipment—less the few cases pilfered by him. Under these circumstances it would be unjust to conclude that the whole load had been diverted into unlawful channels, justifying its condemnation or confiscation so as to deprive the petitioner of its property rights therein.

The petitioner insists that the inference last stated represents the true facts and should be drawn from the evidence in the original trial as supplemented by the allegations in the petition treated as an affidavit.

In the original trial, whether the liquor was in course of interstate shipment was not decided. The court instructed the jury that this was immaterial on the question of Gordon's guilt or innocence. On that record it is impossible to determine whether the jury convicted Gordon on the theory he had diverted the whole cargo or only purloined and sold, or was about to sell, a small portion thereof while in good faith transporting the cargo, as a whole, to its destination in Georgia.

The petitioner seeks to raise these questions which materially affect its rights. In the hearing below, the court disregarded the allegations in the petition and found the facts set out in its judgment "from the record in the criminal cause." In so doing, it did not find the determinative facts. Herein lies the error.

The record in the criminal cause, if clear and unambiguous on the questions here raised, would be as binding upon petitioner as upon Gordon. *S. v. Hall, supra.* But such is not the case. Additional facts must be found.

Under some circumstances injunctive relief is permissible. *McCormick v. Proctor,* 217 N. C., 23, 6 S. E. (2d), 870. When, however, there is an action pending, as here, motion in the cause is the proper procedure. *Humphrey v. Churchill, Sheriff,* 217 N. C., 530, 8 S. E. (2d), 810.

I vote to remand for further hearing.

SEAWELL, J., dissenting: I dissent from the main opinion in its holding that (a) Atlantic States Motor Lines, Inc., has any legal right to intervene in this criminal proceeding, either before or after the conviction of Gordon, since the statute does not provide for such procedure; or (b) if it be conceded, for the purpose of discussion only, that it had such right, in the holding that it has not already exercised it or had an opportunity to exercise it; or (c) further, that the petition shows any merit to sustain the intervention. My conclusion is that this, the second appeal of the carrier, presents a question of law only and that remand of the case for further hearing is unwarranted.

The significance of any opinion rendered in this case will not be clear without further information as to the proceedings already taken. The importance of the case demands a statement of its history.

John Gordon was tried at the November Criminal Term, 1943, of Wake County Superior Court upon a warrant charging him with: (1) Unlawful possession of intoxicating liquor; (2) unlawful possession of intoxicating liquor for the purpose of being sold, given away, or otherwise disposed of; and (3) unlawful transportation of intoxicating liquor. He was convicted on all three counts. The evidence fully described the liquor in his possession—579 cases—and its disposition in the truck.

At the trial the petitioner in this proceeding asked to intervene in the trial, claiming the liquor and anticipating the confiscation thereof in the event of Gordon's conviction, and this was refused. Counsel for this intervener, however, did participate in the trial and brought into the record voluminous evidence, which may be found in the record in that case.

Gordon appealed his case to this Court, and the Court found no error. 224 N. C., 304. At the same time, the present petitioner appealed from the order refusing intervention and was heard here. The appeal was dismissed. *S. v. Gordon, supra.*

The opinion of the Court with reference to the proposed intervention, by *Justice Barnhill,* is as follows:

"Whether this provision (G. S., 18-6, G. S., 18-13, G. S., 18-48) is in the nature of a forfeiture for crime or a confiscation as contraband is not presented for decision on this record. Upon its determination the rights of the petitioner largely depend. 30 Am. Jur., 541. As the question has not been decided by this Court, it should have full opportunity to be heard. This right the court below was careful to preserve. Petitioner was granted a hearing and opportunity to present its claim. But the hearing has not been had."

The reference in this opinion is to the order of Judge Burgwyn made at the same time sentence was pronounced upon Gordon at his trial by which the whiskey was confiscated and those interested were permitted to assert their claims.

Before the opinion was handed down in that case—*S. v. Gordon, supra*—the Atlantic States Motor Lines, Inc., filed a so-called petition of intervention before Judge Burgwyn, presiding at the November, 1944, Civil Term of Wake Superior Court, setting up certain claims, as the innocent owner of the whiskey found in the possession of Gordon and confiscated by the former order, and making the entire record in the criminal case against Gordon an exhibit. This petition purports to be filed under Judge Burgwyn's order.

Thereafter, there' was a petition filed by Chatham County, North Carolina, demanding that the confiscated liquor be sold as provided by the statute—ch. 310, Public Laws of 1941—see G. S., 18-13, *supra*—and the proceeds turned over to the School Fund of Chatham County.

At the hearing upon these petitions, the Atlantic States Motor Lines, Inc., demanded judgment by default upon its petition, on the theory that it was the duty of the intervener, Chatham County, or some undesignated person or agency, to deny, or be subject to judgment *pro confesso,* and tendered judgment. Judge Burgwyn declined to sign the judgment.

The petitioner did not produce or offer any evidence whatever in support of its petition, but apparently had relied upon its motion for a default judgment. The petitioner has not anywhere in the record suggested that it was denied a hearing before Judge Burgwyn, nor did it, in its exception to the judgment, point out any error it claimed, other than refusal of its motion for judgment by default on its petition.

However, Judge Burgwyn did find the facts in the case, substantially as follows:

"About 3 O'clock P. M., on the 10th day of July, 1943 a large truck was seen by the law enforcement officers of Wake County parked in front of Otis Mills' service station on Highway #64 in White Oak Township, Wake County. No one was in the truck at that time. In about ten minutes the defendant, John Gordon, got in the truck and drove it in a Westerly direction along Highway #64, and Otis Mills, the operator of Mills Service Station, drove off immediately behind the truck in a Ford Coupe automobile. The truck and automobile went down the highway about 300 yards in a ravine, and pulled off on the shoulder of the road, and the driver of both the truck and the car got out and after seeing one of the officers got into their respective vehicles, and proceeded in a Westerly direction on Highway #64. The officers followed the vehicles, and found the truck parked on the shoulder of the highway headed in a Westerly direction, and the automobile parked on the shoulder of the road headed in an Easterly direction immediately in the rear of the truck and about two or three feet distance from it. When the officers arrived Mills was on the ground and Gordon, the driver of the truck, was in the truck, and three cases of whiskey had been removed from the lines in which it was packed, and was stacked on top of each other near the rear door of the truck, and on one case appeared the following figures:

$$\begin{array}{r} 36 \\ 7 \\ \hline 252 \\ 33 \\ \hline 285 \end{array}$$

The truck contained 579 cases of whiskey labeled 'Calvert's Reserve' and 'Calvert's Special,' all in pint, half-pint and one-fifth gallon bottles. The truck was the tractor trailer type, the trailer being enclosed with doors in the rear which were without lock or fastening. There was no seal on the truck, and no Interstate Commerce license number in view."

Here follows transcript of certain papers found in the truck. The finding of facts continues:

"The truck loaded with whiskey arrived at M. C. Garner's truck terminal in the City of Raleigh in the early morning of July 10, 1943 in charge of John Gordon. Upon arrival in Raleigh the driver of the truck, John Gordon, borrowed the automobile of M. C. Garner, and drove to Otis Mills' Service Station, about 17 miles from the City of Raleigh, on Highway #64, and after a conference with Mills returned to the City of Raleigh, and drove the truck loaded with the whiskey to Mills Service Station when he had another conference with Mills, and

at which time he told him that he had a load of whiskey, and if he would go down the road he would let him have some of it.

"None of the packages of liquor were anywhere labeled to show the name of the consignee. The whiskey was not being transported to or from a North Carolina A. B. C. Store. No North Carolina A. B. C. stamps were attached to any of the containers of the whiskey."

Thereupon, the court ordered that the whiskey be confiscated in accordance with the former order of the court, and retained the cause for a determination of the rights of the Board of Education of Wake County and the Board of Education of Chatham County to the proceeds derived from the sale of the whiskey which had been ordered sold. The intervener, Atlantic States Motor Lines, Inc., appealed from this order, basing its appeal on exception to the refusal of its motion for a default judgment, and upon the invalidity of the judgment upon the facts found.

Before proceeding further with the discussion, I wish to say as pointedly as I know how that if the Motor Company was entitled to any hearing by an intervention order, such as was originally entered in this cause, it has had it, with a full opportunity to present to the court any evidence it may have had in support of its claim; and there is not the slightest suggestion in the record that it was denied a full hearing. The appeal, if it has any place at all in our procedure, brings up a question of law only to be decided in this Court.

I make no apology for the space I may have to occupy in discussing this case—one which I consider of great and immediate importance to the public—but will be as brief as the circumstances permit.

I. The statute, in obedience to which the lower court undertook to confiscate the liquor possessed and transported by Gordon contrary to law—G. S., 18-6—is copied from the National Prohibition, or Volstead, Act of similar import. It makes no provision for a hearing with respect to intoxicating liquor confiscated by the court because of its possession or transportation contrary to state law, although it does provide for a hearing before condemnation of innocuous property used in the transportation. The omission is intentional, deliberate. It is based on the universally recognized fact that intoxicating liquors passing into illegitimate channels are a nuisance, a menace to society, and where the state provides confiscation, no property right can be asserted in them against the superior and often exigent demands of the public welfare. In other words, intoxicating liquor, when possessed or transported contrary to law, loses its character as property. *Ziffrin v. Reeves,* 308 U. S., 132, 84 L. Ed., 128, loc. cit. L. Ed., p. 136, in considering a similar law and a factual situation like that presented here, observes: "Property rights in intoxicants depend on state laws and cease if the liquor becomes contraband."

The statutes of many states, including ours, expressly deprive contraband liquor, in the sense I have described, of its character as property. G. S., 18-4. So did the National Prohibition Act. U. S. C. A., Title 27, sec. 39. Nevertheless, any statute which summarily confiscates intoxicating liquor upon conviction of a person unlawfully possessing or transporting it has that effect.

The confiscatory feature of the law was not affected by the enactment of the Beverage Control Act as we now have it, although some of the features of the more recent law are held to be State-wide. *S. v. Davis,* 214 N. C., 787, 1 S. E. (2d), 104; *S. v. Carpenter,* 215 N. C., 635, 3 S. E. (2d), 34.

Cases cited in intervener's brief bearing on the question of due process and want of notice and hearing are too general for application to the particular situation presented in this case.

Similar provisions of the law have been uniformly upheld as constitutional and valid by the courts of many states and by the Supreme Court of the United States.

"An excellent illustration of the extent of the power of the state, consistent with due process of law, to provide for the summary destruction of property declared by statute to be illegal is found in the case of intoxicating liquors . . . Liquors brought for sale into a district in which sale is prohibited may be summarily seized and destroyed without compensation." 12 Am. Jur., Constitutional Law, sec. 681; 30 Am. Jur., Intoxicating Liquors, sec. 554.

In *Sentell v. New Orleans & C. R. Co.,* 166 U. S., 698, 705, 41 L. Ed., 1169, 1172, it is said: "It is true that under the 14th Amendment no state can deprive a person of his life, liberty, or property without due process of law; but in determining what is due process of law we are bound to consider the nature of the property, the necessity for its sacrifice, and the extent to which it has heretofore been regarded as within the police power. So far as property is inoffensive or harmless, it can only be condemned or destroyed by legal proceedings, with due notice to the owner; but so far as it is dangerous to the safety or health of the community, due process of law may authorize its summary destruction." *Samuels v. McCurdy,* 267 U. S., 188, 69 L. Ed., 568; *Crane v. Campbell,* 245 U. S., 304, 62 L. Ed., 304.

In *Samuels v. McCurdy, supra,* it is pointed out that the proper remedy for one who claims the ownership of liquor and denies the right of the state to confiscate it is by injunction.

"Finally it is said that the petitioner here has no day in court provided by the law, and therefore that, in this respect, the liquors have been taken from him without due process. The supreme court of Georgia has held in *DeLaney v. Plunkett,* 146 Ga., 547, 565 . . . that,

under the 20th section of the. Act of November 17, 1915 (Georgia Laws Extr. Sess. 1915, p. 77), quoted above, which declares that no property rights of any kind shall exist in prohibited liquors and beverages, no hearing need be given the possessor of unlawfully held liquors, but that they may be destroyed by order of the court. . . . The law provides for an order of destruction by a court, but it does not provide for notice to the previous possessor of the liquor, and a hearing before the order is made. Under the circumstances, *prima facie* the liquor existed contrary to law, and it was for the possessor to prove the very narrow exceptions under which he could retain it as lawful. If he desired to try the validity of the seizure, or the existence of the exception by which his possession could be made to appear legal, he could resort to suit to obtain possession and to enjoin the destruction under the Georgia law, as he has done in this case. This, under the circumstances, it seems to us, constitutes sufficient process of law under the. Federal Constitution, as respects one in his situation. *Lawton v. Steele,* 152 U. S., 133, 142, 38 L. Ed., 385."

There is no question that intoxicating liquors, under proper conditions, may be transported through the state into another state as an interstate shipment under the protection· of the Commerce Clause, while that is being done without violation of valid police powers of the state; but in the repeal of the 18th Amendment, neither the U. S. Constitution nor the Congress left prohibition territory helpless to prevent importation of liquor in the prohibition territory in violation of valid state law.

In *Carter v. Commonwealth of Va.,* 321 U. S., 131, 88 L. Ed., 605, this principle is expressed: "In a word, having the power to prohibit liquor from coming into a State, a State may take measures against frustration of that power by resort to the claim that liquor passing through a State enjoys the protection of the Commerce Clause."

If the liquor concerned in this controversy ever entered the State under the protection of the Commerce Clause—as to which there may be doubt—it lost that protection when found being possessed and transported contrary to law. Upon conviction of the offender, confiscation of the liquor seized and concerned in the illegal act depends upon the facts developed upon the trial for the criminal offense, and is made the subject of a judicial order upon such conviction. The liquor itself under such circumstances is regarded as the thing offending, and the confiscation is summary. *Goldsmith, Jr.—Grant Co. v. U. S.,* 254 U. S., 505, 65 L. Ed., 376, 379.

I do not mean to say that the action of the court in confiscating the liquor is beyond review. Certainly, by injunction, an interested person may be heard to dispute the arbitrary and capricious exercise of this power or its exercise beyond the authority of the statute. *Samuels v. McCurdy, supra.* What might be the scope of such a hearing, it is not

necessary now to inquire. I am sure, however, that it is not such a hearing as is contemplated in this remand. As far as the present proceeding is concerned, it is not, in my opinion, contemplated or authorized by the statute; although, indeed, a full hearing, restricted only by the unembarrassed judgment of counsel for the intervener, has been accorded it.

II. If the so-called intervener had a right to a hearing under G. S., 18-6, or any other State law, it has had a full opportunity to be heard upon its present petition purportedly filed under the original order of Judge Burgwyn—the court sitting at a later date for that purpose. The only thing absent at that hearing was evidence, or any offer of evidence, on the part of the intervener in support of its petition. The case comes here without any suggestion in the record that the intervener was denied an opportunity to present its case without let or hindrance in such manner as it saw fit.

This is what actually took place at the hearing:

The defendant moved for judgment by default on its petition for want of an answer—apparently on the theory that the proceeding was governed by the rules of civil procedure relating to adversary actions. The court declined to sign the judgment tendered, and the intervener excepted. It offered no evidence. The judge finding the facts upon which the confiscation was based signed judgment affirming and re-promulgating the former order of confiscation, and the intervener excepted. What is now before this Court? And, what is of equal importance, how is the main opinion (which, without intending to give offense, I find wholly cryptic) to be interpreted?

In its brief the intervener still insists it is entitled to a judgment by default; this is its main contention. In a similar light appellant makes the unique argument that Judge Burgwyn had no power to find any facts *except those contained in the allegations of the petition.* The gist of these allegations is contained in paragraph 14 of that document:

". . . *that John Gordon was not guilty of the crimes with which he was charged, or any of them; that there was no illegal transportation or possession or possession for purpose of sale of the 579 cases of whiskey or any part of it;* that the possession of your petitioner was never changed or broken; that the interstate journey of the 579 cases of whiskey was never changed or broken; that the interstate commerce status of said whiskey was never changed or broken; and, further, in the alternative, *that if John Gordon ever committed any illegal act or had any illegal intent with respect to any part of such whiskey said act and said intent was confined in its scope to not more than 7 cases of whiskey.*"

Since the demands of the intervener are of that character and no discrimination seems to be made in the main opinion as to what posi-

IN RE STATE v. GORDON.

tions of the appellant are approved and what rejected, is the hearing awarded the intervener a trial *de novo* before a jury, upon which all the facts, even the guilt or innocence of Gordon, are again to be put in evidence? That possibility seems too radical for discussion. *Mugler v. Kansas,* 123 U. S., 623, 31 L. Ed., 205; *Southerman v. State,* 66 Neb., 302, 92 N. W., 303. Appellant, under an apparent misconception of what is held in *S. v. Davis, supra,* insists that it is now entitled to be heard before "a fact finding body," although it neither expected nor demanded a trial by jury at the hearing below.

III.    The petitioner bases his right to be further heard in this matter upon an untenable distinction, and his petition is not meritorious. Coming now to the feature most stressed in the main opinion and assuming, without further clarification, that the remand is mainly grounded on that narrow point, I turn to the proposition that Gordon was convicted of having in his possession an amount of liquor—undesignated in the warrant—for the purpose of sale, and that this is not sufficient to warrant forfeiture of the whole cargo of 579 cases constituting the truck load. The contention is that Gordon's purpose, as well as possession, was confined to the three to seven cases of liquor he had pulled out of the stacks and lined up for immediate delivery. As to his *possession,* we find it variously stated that he had "filched," "pilfered," "purloined" these cases of liquor from the intervener "in breach of faith" with his employer and, therefore, the owner should not be penalized by forfeiture of the remaining liquor as to which his intentions were doubtless honorable. All these euphonies add up to "stealing," and that is the climaxing term finally applied.

The contention is in conflict with substantial evidence upon the trial of Gordon and contrary to reasonable inferences therefrom which must be conclusively held to have been within the contemplation of the jury in its verdict of guilty and of the court in judicially ordering the confiscation upon conviction.

First, Gordon was no "hi-jacker." He stole nothing. He was put in actual possession of the truck load of liquor in what intervener's petition admits was the regular custom of the business. His actual possession and custody extended to every part of the load. The car was not sealed. At Baltimore the seal was hung to a link of the chain at the tailgate, offering no obstruction to opening the doors. Employees of the intervener testified on the trial that if applied properly, the doors could not have been opened without breaking the seal. Gordon had physical, actual, manual possession and control of every case of liquor in the load; and the statute affords no room for a distinction between the actual possession of Gordon and the supposed constructive possession of the intervener.

IN RE STATE v. GORDON.

Under these circumstances Gordon was found with the rear doors of the truck open, a pick-up truck backed up to it by a man with a thousand dollars in his pocket, ready to receive such part of the truck load as Gordon saw fit to deliver. All this was by previous arrangement. And the case is to be sent back·so that the intervener may re-explore the mind of Gordon and show that he was virtuous with respect to the bulk of the load which he was transporting with no regard whatever for the State law. The intervener is to take up the fight just where it seems to have thrown in the towel at its last appearance before Judge Burgwyn.

The fallacy of the decision lies in its assumption that the court is without power to make an order confiscating contraband whiskey unless the warrant under which the defendant is tried specifies the amount and description, such as would be necessary in a civil action to try the title. The authority for the order of confiscation, however, is seated upon the evidence adduced in the trial, and for the purpose of the order this is addressed to the court. Hence, if there are inferences in that evidence upon which the order can be justified, the confiscation should be upheld. That there are such inferences in the present case has, as far as I am able to discover, not been denied.

The law, as I have said, contemplates that confiscation should rest upon the facts of the case as developed on the criminal action. To allow these to be refuted in a subsequent hearing by evidence *de novo* destroys the effectiveness of a well considered law and lets in all the evils which it was destined to prevent.

But suppose the intervener could make good on this point at a rehearing, what then? No reference is made in the main opinion to the effect of the conviction of Gordon on the two other counts in the warrant which do not have to do with sale, or the purpose to sell. These offenses, too, are stated in the warrant in general terms; but conviction under similar indictments has been upheld, *even when a verdict of not guilty has been rendered* on the count charging possession for purpose of sale. *S. v. Davis, supra.* Why should this case be sent back upon such tenuous ground, relating solely to one count in a warrant, when Gordon was convicted of transporting a whole cargo contrary to law, and conviction for this offense, also, carries with it confiscation of the liquor? The effect is to annul the order of confiscation on an inconclusive finding, if the issue as defined in the main opinion is favorable to the intervener. The result is achieved by the simple process of ignoring the basis of the conviction.

Writing in my present capacity, I am not interested in promoting the ideologies of any political or social group. That I might do as a private citizen if I so desired. But looking at the law as coldly and objectively as I know how, I am not willing to admit that contraband liquor has,

under that law, an indestructible quality as property of which the State cannot deprive it by summary action when found to be contraband. If so, the remedy is to declare the confiscatory provisions of the present law unconstitutional and be done with it. If not, they deserve to be enforced according to their tenor. Perhaps in some portions of the State the popular opinion as to property in whiskey has undergone a change, but that feeling has not crystallized into law or repeal of law. The statute under which we are working was molded under a different conception of the inherent evils of intoxicating liquor, especially when allowed to flow in illegitimate channels, and should be construed in that light.

It does us no good to be mindful of the spigot and take no care for the bung. The wholesale distribution of contraband liquor in North Carolina under the guise of transportation through the State under the protection of Interstate Commerce has fallen into a pattern, which the present case closely follows. Not doubting in the least that my colleagues of a different opinion have as much conscience and zeal as I, and perhaps greater wisdom, in the enforcement of the law, I feel that we are in danger of striking down the most effective provision of the statute by which wholesale violations of the law may be prevented.

I vote to dismiss the petition, or failing that, to affirm the order of the court below.